UNITED STATES of America

v.

Joseph Vito MASTRONARDO, Jr.,
Appellant No. 87–1525.

UNITED STATES of America

v.

Joseph Vito MASTRONARDO, Sr.,
Appellant No. 87–1644.

UNITED STATES of America

v.

John Vito MASTRONARDO, Appellant
No. 87–1526.

UNITED STATES of America

v.

Herbert L. CANTLEY, Appellant No. 87–
1541.

UNITED STATES of America

v.

John HECTOR, Appellant No. 87–1561.

Nos. 87–1525, 87–1526, 87–1541,
87–1561 and 87–1644.

United States Court of Appeals,
Third Circuit.

Argued May 2, 1988.

Decided June 13, 1988.

Rehearing Denied in Nos. 87–1525, 87–
1526, 87–1561 and 87–1644 July
13, 1988.

Rehearing and Rehearing In Banc in No.
87–1541 Denied July 13, 1988.

Dennis J. Cogan, Abramson, Cogan, Ko-
gan, Freedman & Thall, P.C., Philadelphia,
Pa., for appellant Joseph Vito Mastronardo,
Jr.

John Rogers Carroll, Thomas Colas Car-
roll (argued), Carroll & Carroll, Philadel-
phia, Pa., for appellant Joseph Vito Mastro-
nardo, Sr.

Peter Goldberger, Philadelphia, Pa., for
appellant John Vito Mastronardo.

James D. Crawford (argued), Sherry J.
Hanley, Schnader, Harrison, Segal & Lew-
is, Philadelphia, Pa., for appellant Herbert
L. Cantley.

Norris E. Gelman, Philadelphia, Pa., for
appellant John Hector.

Edward S.G. Dennis, Jr., U.S. Atty., Wal-
ter S. Batty, Jr., Asst. U.S. Atty., Chief of
Appeals, Glenn B. Bronson (argued), Asst.
U.S. Atty., Philadelphia, Pa., for U.S.

Before GIBBONS, Chief Judge, MANSMANN and COWEN, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

Joseph Vito Mastronardo, Jr., Joseph Vito Mastronardo, Sr., John Vito Mastronardo, Herbert Cantley and John Hector each appeal to this Court to overturn their convictions for conducting an illegal gambling business in violation of 18 U.S.C. § 1955, using interstate telephone service in aid of an illegal gambling business, in violation of 18 U.S.C. § 1952, participating in a conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and concealing material facts from the United States, in violation of 18 U.S.C. § 1001.[1]

Because we agree with Mastronardo, Jr., Mastronardo, Sr. and Cantley's argument that their convictions for conspiracy to defraud the United States and concealing material facts from the United States are based, at least in part, on allegations that

they "structured" currency transactions so as to induce banks to fail to file Currency Transaction Reports ("CTRs"), and that the statutes and regulations then in force did not give them fair notice that such "structuring" was criminal, we will reverse these convictions. We find the remainder of the appellants' arguments to be without merit and affirm the remaining convictions.

## I.

On June 26, 1986, a federal grand jury returned a 63 count indictment against eight defendants. The indictment named the five appellants—Joseph Vito Mastronardo, Jr., Joseph Vito Mastronardo, Sr., John Vito Mastronardo, Herbert L. Cantley, and John Hector—and three co-defendants not parties to this appeal—Shearson Lehman Brothers, Inc. ("Shearson"), Mario Scinicariello, and Sheldon Shore. Each of the defendants was indicted for crimes arising out of an alleged multi-million dollar bookmaking and money laundering operation.[2]

1. Not all of the appellants were convicted of each of these crimes. Mastronardo, Jr. was convicted of one count of conspiracy to defraud the United States, one count of conducting an illegal gambling business, eight counts of using an interstate telephone service in aid of a gambling business, and one count of concealing material facts from the United States. Mastronardo, Sr. was convicted of one count of conspiracy to defraud the United States, one count of conducting an illegal gambling business, two counts of using interstate telephone service in aid of a gambling enterprise, and one count of concealing material facts from the United States. John Mastronardo was convicted of one count of conducting an illegal gambling business and one count of using interstate telephone service in aid of a gambling business. Cantley was convicted of two counts of conspiracy to defraud the United States, one count of conducting an illegal gambling business, and three counts of concealing material facts from the United States. John Hector was convicted of one count of conducting an illegal gambling business and two counts of using interstate telephone service in aid of a gambling enterprise.

2. Count 1 of the indictment charged Mastronardo, Jr., Mastronardo, Sr., John Mastronardo, Cantley, Hector, Shearson Lehman and Shore with participating in a conspiracy to defraud the United States in violation of 18 U.S.C. § 371. As charged in the indictment, this conspiracy was one to

defraud the United States by impeding, impairing, obstructing and defeating the following lawful governmental functions of the Internal Revenue Service of the United States (the "IRS"): (a) the function of collecting data and reports of currency transactions in excess of $10,000 to be used in criminal, tax and regulatory investigations and proceedings; (b) the function of enforcing the laws and regulations set forth in Chapter 53 of Title 31, United States Code, and Part 103 of Title 31, Code of Federal Regulations, regarding the required reporting of currency transactions in excess of $10,000; and (c) the function of ascertaining, computing, assessing and collecting the revenue, specifically, income taxes due and owing the United States from JOSEPH VITO MASTRONARDO, JR., JOSEPH VITO MASTRONARDO, SR., JOHN VITO MASTRONARDO, JOHN HECTOR and SHELDON SHORE, on income derived from the Mastronardo gambling business and elsewhere.

App. at 97.

Count 2 charged that Cantley, Scinicariello and Shearson had conspired to conceal Scinicariello's cash income from the government in an effort to defraud the United States. This conspiracy, as charged in the indictment, sought to

defraud the United States by impeding, impairing, obstructing and defeating the following lawful governmental functions of the In-

All defendants, except Scinicariello, were tried together before a jury. At the close of the government's case, the district court entertained defendants' motions for directed verdicts of acquittal, and granted those motions as to all of counts four to six, fifteen to seventeen, and twenty to twenty-two. The district court also granted Mastronardo, Sr.'s motion for directed verdicts on counts twenty-five to thirty-eight, and forty-eight to fifty-four. Finally, the district court granted John Mastronardo's motion for directed verdicts on counts twenty-five to thirty-nine, forty-eight to fifty-five, and sixty-one.

The jury returned the following guilty verdicts on February 25, 1987. Mastronardo, Jr. was convicted of conspiracy to defraud the United States (count one), conducting an illegal gambling business (count three), eight counts of using interstate telephone service in aid of a gambling business (counts eight to thirteen, eighteen, and nineteen), and concealing material facts from the United States (count sixty-one). Mastronardo Sr. was convicted of conspiracy to defraud the United States (count one), conducting an illegal gambling business (count three), two counts of using interstate telephone service in aid of a gambling business (counts eighteen and nineteen), and concealing material facts from the United States (count sixty-one). John Mastronardo was convicted of conducting an illegal gambling business (count three), and one count of using interstate telephone service in aid of a gambling business (count twenty-three). Cantley was convicted of two counts of conspiracy to defraud the United States (counts one and two), conducting an illegal gambling business (count three), and three counts of concealing material facts from the United States (counts sixty-one through sixty-three). Hector was convicted of conducting an illegal gambling business (count three), and two counts of using interstate telephone service (counts eleven and twenty-four).

These defendants were acquitted of the remaining charges against them, and defendants Shore and Shearson were acquitted of all charges.[3] Mastronardo, Sr., Mas-

ternal Revenue Service of the United States (the "IRS"): (a) the function of collecting data and reports of currency transactions in excess of $10,000 to be used in criminal, tax and regulatory investigations and proceedings; (b) the function of enforcing the laws and regulations set forth in Chapter 53 of Title 31, United States Code, and Part 103 of Title 31, Code of Federal Regulations, regarding the required reporting of currency transactions in excess of $10,000; and (c) the function of ascertaining, computing, assessing and collecting the revenue, specifically, income taxes due and owing the United States from MARIO SCINICARIELLO.

App. at 112.

Count 3 charged Mastronardo, Jr., Mastronardo, Sr., John Mastronardo, Cantley, Hector and Scinicariello with violation of 18 U.S.C. § 1955 by conducting, financing, managing, supervising, directing and owning a multi-state illegal gambling business.

Counts 4 through 24 charged Mastronardo, Jr., Mastronardo, Sr., John Mastronardo and Hector with using interstate telephone service in aid of an illegal gambling business in violation of 18 U.S.C. § 1952. Mastronardo, Jr. was named in Counts 4 to 19, Mastronardo, Sr. in Counts 15 to 19, John Mastronardo in Counts 20 to 23, and Hector in Counts 11 and 24.

Counts 25 through 60 charged the defendants with willfully causing financial institutions to fail to file CTRs for cash transactions greater

than $10,000, in violation of 31 U.S.C. §§ 5313 and 5322, 18 U.S.C. § 2, and 31 C.F.R., Part 103. Specifically, Cantley and Shearson were named in Counts 25 through 60, Mastronardo, Jr., Mastronardo, Sr., John Mastronardo and Hector were named in Counts 25 to 39 and 48 to 55, Scinicariello was named in Counts 40 to 45 and 56 to 59, and Shore was named in Counts 38 and 55.

Count 61 charged all defendants except Scinicariello with participating in a scheme to conceal the existence, source, origin, and transfer of currency by exchanging currency for cashier's and treasurer's checks of less than $10,000, in violation of 18 U.S.C. §§ 1001 and 1002. This scheme allegedly sought to conceal income earned by the Mastronardo gambling business.

Count 62 charged Cantley, Scinicariello and Shearson with participating in a similar scheme to conceal Scinicariello's unreported cash income, in violation of 18 U.S.C. §§ 1001 and 1002.

Count 63 charged Cantley and Shearson with participating in a similar scheme to conceal the unreported cash income of Stanley Marvel, III, in violation of 18 U.S.C. §§ 1001 and 1002.

3. On July 8, 1987, the district court granted Mastronardo, Sr.'s motion for a new trial on his conviction under count 61, on the ground of improper venue, and denied the defendants' other post-trial motions. This count against Mastronardo, Sr. was subsequently dismissed by the district court on motion of the United States.

tronardo, Jr., John Mastronardo, Cantley and Hector appeal their convictions to this Court.

## II.

The principal contention raised in this appeal is whether the above named defendants can be held criminally liable for "structuring" currency transactions to avoid having financial institutions report the transactions to the government.[4] As originally enacted, the Currency Transaction Reporting Act, 31 U.S.C. § 5311 *et seq.* (1982), authorized the Secretary of the Treasury to require the reporting of currency transactions.[5] Although the statute permitted the Secretary to adopt regulations requiring both "financial institutions"[6] and other "participants" in transactions to file CTRs, the Secretary, during the time period relevant to this case, issued regulations which required only financial institutions to file CTRs.[7] Such institutions were required to file CTRs when participating in a transaction involving more than $10,000 in currency. Failure to file a CTR when required by the Secretary's regulations subjected the offending *institution* to civil and criminal penalties. However, no provision of the Currency Transaction Reporting Act made it a crime for an individual to "structure" his transactions so as to keep each transaction under the $10,000 floor, thus inducing a financial institution not to file a CTR in instances where it might be required to file a CTR were the person's transactions aggregated.[8]

4. Appellants raise a number of additional contentions which they assert provide sufficient justification for overturning their remaining convictions. Specifically, Mastronardo, Jr. asserts that the district court erred in admitting certain audio tapes into evidence, because, he alleges, the seizure of those tapes was not authorized by the relevant search warrant, and because the use of the tapes as evidence against him violated 18 U.S.C. § 2515. He asserts that the district court also erred when it admitted the tapes without affording him an evidentiary hearing. Mastronardo, Jr. raises the additional argument that the district court erred when it declined to confer immunity upon a proposed defense witness. John Mastronardo additionally asserts that the United States presented insufficient evidence to convict him under count twenty-three, and that the court's jury charge on count three did not adequately explain the requirement that at least five persons conduct a gambling business within a certain time period. Cantley also asserts that the United States did not present sufficient evidence to convict him under count three. The defendants incorporate each other's arguments by reference. We have considered these contentions and find them to be without merit.

5. Section 5313(a) stated:
When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments the Secretary of the Treasury prescribes), in an amount, denomination, or amount and denomination, or under such circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes. A partici-

pant acting for another person shall make the report as the agent or bailee of the person and identify the person for whom the transaction is being made.

6. Title 31 U.S.C. § 5312(a)(2) defined a "financial institution" to include banks, thrifts, brokers, currency exchangers, travel agents, and other such establishments.

7. 31 C.F.R. 103.22, as in effect during the relevant time period, stated:
(a) Each financial institution shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution, which involves a transaction in currency of more than $10,000. Such reports shall be made on forms prescribed by the Secretary and all information called for in the forms shall be furnished.
Although not a published regulation, the CTR form provided to financial institutions (Form 4789) stated on its back:
Each financial institution must file a Form 4789 for each deposit, withdrawal, exchange of currency, or other payment or transfer, by, through, or to that financial institution, which involves a transaction in currency of more than $10,000. Multiple transactions by or for any person which in any one day total more than $10,000 should be treated as a single transaction, if the financial institution is aware of them.

8. Congress has since acted to clarify the status of "structuring". Amending the Act in 1986, Congress added a provision entitled "Structuring transactions to evade reporting requirement prohibited," which states:
No person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction—

■ The issue presented by this case is whether a person can be held criminally liable for "structuring" transactions during the relevant time period in such a way that a bank or other financial institution would not be aware that the person is making a number of transactions which, if aggregated, involve more than $10,000 in currency.[9] The United States asserts that such criminal liability exists under a number of statutes, and it charged the defendants in this case with violations of each. First, the United States charged the defendants with violating 18 U.S.C. § 2(b) ("§ 2(b)"),[10] which establishes that a person who causes another to commit an offense against the United States is chargeable as a principal. The government alleged that the defendants willfully caused bank officials to fail to file CTRs. The defendants, however, were acquitted of these § 2(b) charges.

The defendants were also charged, and convicted of violating 18 U.S.C. § 1001 ("§ 1001"),[11] which proscribes schemes to conceal, or cause to be concealed a material fact from the United States. Allegedly, the defendants' structuring of transactions in an attempt to induce banks not to file CTRs constituted an illegal deceptive scheme designed to deprive the Treasury Department of the information contained in the CTRs.

Finally, the defendants were charged, and convicted of violating 18 U.S.C. § 371 ("§ 371"),[12] by participating in two conspiracies to defraud the United States. The government charged that the defendants conspired to conceal income illegally produced by their gambling operation. Inducing banks to fail to file CTRs was referred to by the district court as an "object" of this conspiracy. App. 222–23. The government also individually charged Cantley with conspiring to conceal income earned by Mario Scinicariello. The indictment, in counts one and two, charged that the defendants conspired to defraud the United States by impairing its ability to collect data and reports on currency transactions, to enforce laws requiring the reporting of currency transactions, and to determine and collect income taxes. App. at 97, 112. Thus, while this appeal does not involve a

---

(1) cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a);
(2) cause or attempt to cause a domestic financial institution to file a report required under section 5313(a) that contains a material omission or misstatement of fact; or
(3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.
Pub.L. No. 99–570, Title I, § 1354(a), 100 Stat. 3207–22 (1986) (codified at 31 U.S.C. § 5324).
This provision, however, was not in effect when the defendants in this case acted to structure transactions so as to induce banks to fail to file CTRs.

9. Some courts addressing similar cases have created a subissue, which requires that the court consider whether the transactions at issue were made during the same day, or at the same bank, or at the same bank branch. Because we hold that *any* application of criminal punishment to a bank customer under these statutes and regulations violates due process, *see infra,* we find it unnecessary to draw these distinctions.

10. 18 U.S.C. § 2 provides:
(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

11. 18 U.S.C. § 1001 provides:
Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

12. 18 U.S.C. § 371 provides:
If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

specific conviction for the act of "structuring" transactions, both the § 1001 convictions and the § 371 conspiracy convictions rely upon the purported illegality of "structuring" in order to impose criminal liability upon these defendants.

The issue of whether the United States can impose criminal liability on persons for structuring currency transactions to avoid inducing financial institutions to file CTRs has been addressed by a number of circuit and district courts. The decisions have produced a severe split among the circuits. A number of circuits, including the First, Seventh, Eighth, Ninth and Eleventh, have reversed § 2(b) "willful causing", § 1001 "scheme to conceal" and § 371 conspiracy convictions, generally because they found either (1) that the statutes and regulations discussed above did not appear to proscribe such acts, or (2) that these convictions did not pass constitutional muster because the statutes and regulations failed to give fair warning that the conduct prosecuted was proscribed. *See United States v. Anzalone,* 766 F.2d 676, 680–83 (1st Cir.1985) (reversing convictions under § 2(b), § 1001 and 31 U.S.C. §§ 5312, 5322 because prosecution violates fair warning clause of fifth amendment); *United States v. Gimbel,* 830 F.2d 621, 624–26 (7th Cir.1987) (reversing convictions of bank customer under § 1001 via § 2(b) because statutes and regulations impose no duty upon bank to report "structured" transactions, and thus no derivative duty devolves to customer); *United States v. Larson,* 796 F.2d 244, 245–47 (8th Cir. 1986) (reversing convictions under § 2(b) and § 1001 because imposing duty on bank customer under statutes and regulations in force would violate due process); *United States v. Varbel,* 780 F.2d 758, 760–62 (9th Cir.1986) (reversing convictions under § 2(b), § 1001, and § 371 because application of criminal sanctions against "structuring" customer would violate due process); *United States v. Dela Espriella,* 781 F.2d 1432 (9th Cir.1986) (same); *United States v. Reinis,* 794 F.2d 506 (9th Cir. 1986) (same); *United States v. Denemark,*

779 F.2d 1559 (11th Cir.1986) (reversing a conviction under § 1001 where bank customer had purchased 14 cashiers checks at 14 different banks, because such transactions do not create a duty on the part of banks to file CTRs); *but see United States v. Bank of New England, N.A.,* 821 F.2d 844 (1st Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 328, 98 L.Ed.2d 356 (1987) (distinguishing *Anzalone* from case involving prosecution of bank when customer presented more than $10,000 to same branch of bank during single visit); *United States v. Giancola,* 783 F.2d 1549, 1552–53 (11th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 669, 93 L.Ed.2d 721 (1986) (upholding conspiracy convictions where co-conspirators made transactions of more than $10,-000 in one day at single branch of bank).

While the First, Seventh, Eighth and Ninth Circuits would overturn convictions like those before this Court, the Eleventh apparently would not overturn a conviction if more than $10,000 is exchanged at a single bank branch in a single day. *See Giancola,* 783 F.2d at 1552–53.

Other Courts, including the Second, Fourth, and Tenth Circuits, have upheld convictions. *See United States v. Heyman,* 794 F.2d 788 (2d Cir.) *cert. denied,* —— U.S. ——, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986); *United States v. Richeson,* 825 F.2d 17 (4th Cir.1987); *United States v. Cook,* 745 F.2d 1311 (10th Cir.1984), *cert. denied,* 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985).[13] These courts have generally looked to the intent of the law and concluded that the statute and regulations do proscribe the conduct prosecuted.

■ We hold that this statute and regulation did not give a reasonable bank customer fair notice that "structuring" cash transactions to avoid the reporting requirement is criminal. Therefore, we need not reach an analysis of Congressional intent. Although the statute authorizes the Secretary to draft regulations requiring "participants" in transactions to file CTRs, the

---

**13.** A good, if slightly outdated summary of the development of the law in this area can be found in the opinion of Judge Barker in *United*

*States v. Risk,* 672 F.Supp. 346, 350–58 (S.D.Ind. 1987).

Secretary did not do so. Rather, the Secretary enacted regulations which, by their explicit language, place a duty to file CTRs only on financial institutions. The regulations do not even intimate that a bank customer might somehow be violating the law if he structures his transactions so as to avoid making a transaction in currency greater than $10,000. While a bank customer might reasonably conclude that doing so would frustrate the intent of Congress, frustrating the intent of Congress is not criminal. An additional factor, noted by the Ninth Circuit, is that "[t]he present ambiguity regarding coverage of the Reporting Act and its regulations has indeed been created by the government itself." *Varbel*, 780 F.2d at 762.

Given the principle that criminal statutes must be strictly construed, *United States v. Enmons*, 410 U.S. 396, 411, 93 S.Ct. 1007, 1015, 35 L.Ed.2d 379 (1973), and the Supreme Court's pronouncement that "a penal statute [must] define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited," *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983), we hold that imposing criminal liability on customers for "structuring" transactions violates due process.

Therefore we will reverse the convictions under § 1001 and § 371.

### III.

For the foregoing reasons we will reverse Mastronardo, Jr.'s convictions under counts one and sixty-one, Mastronardo, Sr.'s conviction under count one, and Cantley's convictions under counts one, two, and sixty-one through sixty-three. We will affirm the remaining convictions.