UNITED STATES of America

v.

DONAHUE, Joseph P., Appellant.

No. 89–5133.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Aug. 8, 1989.

Decided Sept. 6, 1989.

Rehearing and Rehearing In Banc
Denied Oct. 6, 1989.

Gregory T. Magarity, Stanley R. Scheiner, William C. Nugent, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, Pa., for appellant.

William A. Behe, Gordon A.D. Zubrod, James J. West, U.S. Atty., U.S. Attorney's Office, Harrisburg, Pa., for appellee.

OPINION OF THE COURT

Before SLOVITER and GREENBERG, Circuit Judges, and FISHER, District Judge.*

GREENBERG, Circuit Judge.

On April 19, 1988, a three-count indictment was returned against appellant, Joseph Donahue, and his co-defendant Michael Coffey, in the Middle District of Pennsylvania. Count I charged both defendants, along with unindicted co-conspirator Frederick Luytjes, with conspiring in viola-

---

* Honorable Clarkson S. Fisher, Judge, United States District Court for the District of New Jersey, sitting by designation.

tion of 18 U.S.C. § 371 [1] (1) to willfully and knowingly avoid filing Currency Transaction Reports (CTRs), relating to domestic currency transactions, as required by 31 U.S.C. §§ 5313 and 5322; (2) to willfully and knowingly avoid filing Currency and Monetary Instrument Reports (CMIRs), relating to international transfer of currency and monetary (negotiable) instruments, as required by 31 U.S.C. §§ 5316 and 5322; and (3) to defraud the United States of lawful revenue in violation of the foregoing currency transaction reporting laws, as well as 26 U.S.C. §§ 7201 and 7206. Count II charged Donahue and Coffey, as well as Luytjes, with a substantive and aiding and abetting violation, 18 U.S.C. § 2, of 31 U.S.C. §§ 5316 and 5322, by transporting, causing to be transported, or aiding and abetting the transportation of approximately $1,000,000 in currency from Lackawanna County, Pennsylvania, to the Grand Cayman Island, British West Indies, without filing the CMIRs.[2] Count III of the indictment charged Coffey alone with a substantive violation of 31 U.S.C. §§ 5313 and 5322.[3] On motion by the government the defendants' trials were severed and, on November 16, 1988, Donahue was convicted at a jury trial on Counts I and II. He appeals his conviction on both counts. For the reasons that follow we will affirm.

## I.

Donahue's conviction stems from his participation in a money laundering scheme with Coffey, branch manager of United Penn Bank in Scranton, Pennsylvania, and Luytjes, a drug trafficker. Luytjes, who had entered into a plea agreement with the government and was its primary witness at Donahue's trial, testified that in 1984, he was tried in Florida for drug trafficking and ultimately was acquitted. During the course of his trial, however, he managed to earn between $10 and $13 million from drug smuggling, which he planned to stash away in the event he was convicted.[4] He and his agents deposited $10 million of these proceeds into accounts at United Penn Bank. Luytjes testified that he told Coffey, the officer with whom he dealt at United Penn, that the money had come from the sale of his business, Air America, and that he had written up a fictitious agreement to sell the company and represented that the buyer had paid him in cash.[5] He further testified that Coffey asked him if he would be interested in smuggling money to the Cayman Islands in order to avoid paying taxes on it, and that they agreed that Coffey would launder $4 million in exchange for a fee of $100,000. Pursuant to this agreement, Luytjes on various occasions delivered cash to Coffey. Although Coffey refused to disclose to Luytjes how he was transporting the money to the Cayman Islands, he introduced Luytjes to Donahue, suggesting that Luytjes might want to invest in Donahue's scuba diving business in the Cayman Islands. According to Luytjes, Donahue revealed to him that he was working with Coffey in moving Luytjes' money to the Cayman Islands.

Donahue and Coffey dealt with the cash Coffey received from Luytjes in a number

---

1. 18 U.S.C. § 371 provides:

 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. Count II also charged violations of 31 U.S.C. §§ 1101 and 1059, the predecessors of §§ 5316 and 5322(b).

3. Again, Count III also charged violation of 31 U.S.C. § 1059.

4. Luytjes testified as to how he did this as follows:

 On the weekends of the trial I scheduled approximately seven flights, seven weekends of the 11–week trial. And I would leave Tampa, the court, and fly back to Pennsylvania, get in another airplane, fly down to Colombia, spend the night, get up in the morning, fly back to the United States on Sunday morning and get back to Pennsylvania Sunday night, get in another airplane, fly back to Tampa and go back to court for the week.

5. Luytjes had unusual assistance in carrying out this farce, as the agreement of sale was prepared by a large Philadelphia law firm which thought the sale was legitimate.

of different ways. On one occasion, Coffey converted a million dollars in cash received from Luytjes into five cashier's checks of $200,000 each. Coffey filled out a CTR upon receipt of the cash, but never filed it. Coffey gave the cashier's checks to Donahue, who transported them to Grand Cayman Island. On other occasions Coffey gave Donahue cash, which Donahue took to various banks in Pennsylvania and New York for conversion into cashier's checks under $10,000 which he then transported to Grand Cayman Island.[6] Finally, from time to time Donahue would transport cash given to him by Coffey, apparently in $200,000 allotments, from Pennsylvania to Grand Cayman Island. Coffey did not file CTRs for the cash he gave to Donahue. Donahue never filed a CMIR when he left this country.

Upon arrival at Grand Cayman Island, Donahue would deposit the cash and cashier's checks into his own bank accounts, from which it was transferred into Luytjes' accounts there. Donahue told Luytjes that he was being paid $50,000 for his role in the money laundering scheme.

As part of his plea agreement with the government, Luytjes taped a number of his conversations with Donahue. Various statements made by Donahue on these tapes indicate his knowing participation in the above-described money laundering scheme.[7]

## II.

■ Donahue's primary challenge to his conviction on Count I of the indictment relates to the charge that he, Coffey and Luytjes conspired, in violation of 18 U.S.C. § 371, to willfully and knowingly avoid filing CTRs in violation of 31 U.S.C. §§ 5313 and 5322. The essence of his argument is that he was held criminally liable for "structuring" currency transactions, con-

duct which, during the relevant time period, was not unlawful.

31 U.S.C. § 5313(a) authorizes the Secretary of the Treasury to require both financial institutions and other participants in a currency transaction to file a report on the transaction. During the time period relevant to this case, the Secretary required only financial institutions to file reports on transactions of more than $10,000. 31 C.F.R. § 103.22(a) (1983). Nothing in the Act or regulations expressly prohibited a bank customer from "structuring" transactions to keep each transaction under $10,000, in order to avoid triggering, or in an attempt to conceal, the bank's obligation to file.

In *United States v. Mastronardo*, 849 F.2d 799 (3d Cir.1988), we held that prior to the Act's 1986 amendment,[8] a customer could not be held criminally liable for structuring transactions to avoid the reporting requirements. The defendants in *Mastronardo*, all bank customers, had been convicted of participating in a conspiracy to defraud the United States in violation of 18 U.S.C. § 371, and participating in a scheme to conceal material facts from the United States in violation of 18 U.S.C. § 1001. We noted that "while this appeal does not involve a specific conviction for the act of 'structuring' transactions, both the § 1001 convictions and the § 371 conspiracy convictions rely upon the purported illegality of 'structuring' in order to impose criminal liability upon these defendants." *Id.* at 803–04. We went on to reverse these convictions, reasoning that the statute and regulations "did not give a reasonable bank customer fair notice that 'structuring' cash transactions to avoid the reporting requirement is criminal." *Id.* at 804.

Although Donahue maintains that our decision in *Mastronardo* mandates reversal of his conviction, we fully agree with the

---

6. A total of 143 cashier's checks were purchased in northern Pennsylvania in amounts less than $10,000, and deposited in Donahue's accounts in the Cayman Islands.

7. After his acquittal in Florida, Luytjes decided to report his drug trafficking proceeds as income and pay taxes on them. Again using the

ruse of the sale of Air America, he reported the money as a long-term capital gain rather than as ordinary income so as to pay less tax. *Id.*

8. In 1986 Congress expressly proscribed the structuring of transactions to evade the reporting requirements. *See* 31 U.S.C. § 5324.

district court's contrary determination.[9] As the district court recognized, the theory of the government's case on the conspiracy charge was *not* that Donahue conspired to violate section 5313 by structuring transactions, but rather that he did so by agreeing with Coffey to willfully conceal United Penn's duty to file CTRs or by aiding and abetting that violation. When Luytjes delivered quantities of cash exceeding $10,000 to Coffey, Coffey should have but did not file reports of the transactions; and Donahue collaborated in Coffey's efforts to conceal that the cash had ever been received. Donahue was convicted, then, *not* in the capacity as a bank customer or for conduct involving structuring, but rather as a co-conspirator or abettor in a financial institution's scheme to avoid filing CTRs. Thus, *Mastronardo* is inapposite. The fact that part of the scheme to conceal involved structuring transactions at *other* banks is immaterial.

While Donahue himself could not have been held liable for a failure to file CTRs, this does not foreclose his criminal liability for conspiring to do so. A person, even though incapable of committing the underlying substantive offense, can be convicted of conspiracy under 18 U.S.C. § 371. *See, e.g., United States v. Hayes,* 827 F.2d 469, 472–73 (9th Cir.1987). The same is true of aiding and abetting under 18 U.S.C. § 2(a). *See United States v. Standefer,* 610 F.2d 1076, 1085 (3d Cir.1979) (in banc), *aff'd,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980).[10]

Our recent decision in *United States v. American Investors of Pittsburgh, Inc.,* 879 F.2d 1087 (3d Cir.1989), lends support to our analysis here. There, we affirmed the conviction of one of the defendants [Zytnick] for conspiring with a financial institution to circumvent the currency reporting laws in violation of 18 U.S.C. § 371 and/or aiding and abetting the scheme in violation of 18 U.S.C. § 2(a). The evidence established that Zytnick collaborated in the financial institution's violation, not by structuring transactions, but by concealing the extent of his transactions through various other means.[11] We recognized that "under *United States v. Mastronardo,* Zytnick could not be charged with the substantive offense of failing to file CTRs since he had no duty to do so." 879 F.2d at 1103. We nonetheless affirmed his liability on conspiracy and aiding and abetting grounds, noting that "the relief afforded to customers under *Mastronardo* does not apply to Zytnick...." 879 F.2d at 1103 n. 20.[12]

In sum, we reject Donahue's argument that under *Mastronardo* his conviction on Count I must be reversed. Because we find Donahue's remaining objections to his conviction on that count likewise lacking in merit, we will affirm his conviction on Count I.[13]

---

**9.** We regard the *Mastronardo* issue in the context of this appeal, as well as the venue issue discussed below, as involving the interpretation and application of legal precepts and thus we are undertaking a plenary review on these issues. *United States v. Adams,* 759 F.2d 1099, 1106 (3d Cir.), *cert. denied,* 474 U.S. 906, 971, 106 S.Ct. 275, 336, 88 L.Ed.2d 236, 321 (1985).

**10.** Although Count I of the indictment does not specifically charge Donahue with "aiding and abetting" under 18 U.S.C. § 2(a), the absence of specific reference to 18 U.S.C. § 2 in an indictment is not fatal. *See United States v. Catena,* 500 F.2d 1319, 1323 (3d Cir.), *cert. denied,* 419 U.S. 1047, 95 S.Ct. 621, 42 L.Ed.2d 641 (1975). Here, the district court in fact charged the jury under an aiding and abetting theory.

**11.** In fact, one of Zytnick's arguments was that "if he had been aware of the CTR requirement he could have structured his transactions to avoid any violation." 879 F.2d at 1103 n. 20.

**12.** We also held in *American Investors* that a customer of a financial institution could be held criminally liable for willfully causing the institution to fail to file CTRs pursuant to 31 U.S.C. § 5313 and 18 U.S.C. § 2(b), and that *Mastronardo* did not compel a contrary holding because there the defendants had been acquitted of violating 18 U.S.C. § 2(b). Under *American Investors,* liability under sections 5313 and 2(b) can be imposed on a customer if (1) the financial institution had the legal obligation to file CTRs—*i.e.,* the legal capacity to commit the crime—*and* if (2) the customer had the intent to preclude the financial institution from filing CTRs.

**13.** Donahue challenges his conviction on Count I on an alternative ground in relation to that portion of the count charging him with conspiring to defraud the United States by participating in a scheme to evade income taxes in violation of 31 U.S.C. §§ 5313, 5316 and 5322 and 26 U.S.C. §§ 7201 and 7206. He maintains, *inter*

## III.

 Donahue's principal contention that his conviction on Count II of the indictment must be reversed is predicated on a claim that venue of the charge on that count was improper in the Middle District of Pennsylvania. "Congress has incorporated the basic constitutional provisions on venue in Rule 18 of the Federal Rules of Criminal Procedure which provides, in relevant part, that 'the prosecution shall be had in a district in which the offense was committed.'" *United States v. Passodelis*, 615 F.2d 975, 977 (3d Cir.1980). Donahue contends that the crime charged in Count II was not committed in the Middle District of Pennsylvania. We, however, agree with the government that Count II involves an offense "begun in one district"—the Middle District of Pennsylvania—"and completed in another" under 18 U.S.C. § 3237(a) and therefore could be prosecuted in the Middle District of Pennsylvania.

As noted earlier, Count II charged Donahue with violating 31 U.S.C. §§ 5316 and 5322 by knowingly transporting currency from Pennsylvania to Grand Cayman Island without filing reports required by the Secretary of the Treasury.[14] Section 5316(a) provides in relevant part:

(a) ... a person or an agent or bailee of the person shall file a report under subsection (b) of this section when the person, agent, or bailee knowingly—

(1) transports, is about to transport, or has transported, monetary instruments of more than $10,000 at one time—

(A) from a place in the United States to or through a place outside the United States[.][15]

Section 5316(b) directs that the report be filed "at the time and place the Secretary of the Treasury prescribes." In turn, the applicable regulations provide that the report must be filed "at the time of departure," "with the Customs officer in charge at any port of ... departure." 31 C.F.R. § 103.26(b)(1), (3).

In its efforts to prove the charges in Count II, the government introduced evidence at trial that on a variety of occasions Donahue flew from Pennsylvania to Miami, where he changed planes and continued directly on to Grand Cayman Island.[16] Donahue asserts, and the government does not dispute, that "[a]ll of the evidence showed that Donahue went through Customs in Miami," and that "the government neither alleged nor proved that Donahue had a legal duty to file CMIRs in the M.D. of Pa." Appellant's brief at 33. Asserting

---

alia, that the district court improperly failed to charge the jury that in order to convict Donahue on this charge, the evidence had to establish that he had the specific intent to help Luytjes evade his taxes, and that in any event such evidence was lacking. The district court charged the jury that it had to find a "mutual understanding" to "move money in such a way, money of Mr. Luytjes in such a way that the government would be deprived of the ability ... to decide whether or not there was a tax ... due," in which scheme Donahue "willfully and intentionally" joined. Thus, the district court apprised the jury of exactly what Donahue claims it did not know. Furthermore, we find that the evidence introduced by the government was sufficient to sustain the jury's verdict on this charge.

**14.** Count II charged that such transportation was "part of a pattern of illegal activity involving transactions of more than one hundred thousand dollars ($100,000) in a 12–month period" so as to invoke the enhanced penalty provided by 31 U.S.C. § 5322(b). The count also

charged Donahue with aiding and abetting the substantive violation, thus leading the government to contend, brief at 20, that his "accessorial acts in the Middle District of Pennsylvania" justified venue there. While there may be force to this contention, inasmuch as Donahue in Pennsylvania assisted Coffey and Luytjes in the transportation of the money and they might each be viewed as a person who "has transported" monetary instruments, we prefer to predicate our decision on Donahue's direct conduct as a transporter.

**15.** In October of 1984, section 5316(a)(1) was amended to raise the amount transported from $5,000 to $10,000. The text of section 5316(a) was amended in 1984 and 1986 but not materially to this case. We quote the 1986 version.

**16.** The government introduced, *inter alia,* some of Donahue's plane tickets and travel itineraries documenting various of his trips to and from Grand Cayman Island. Government Exhibits 18.1, 18.2. The exhibits showed that the layovers in Miami were only a few hours at most.

that " 'where the crime charged is failure to do a legally required act, the place fixed for its performance fixes the situs of the crime,' " Donahue maintains that the government failed to establish venue in Pennsylvania because the "situs of the crime" was Miami—the place where the reports should have been filed. Brief at 28–34 (citing *Johnston v. United States*, 351 U.S. 215, 220, 76 S.Ct. 739, 742, 100 L.Ed. 1097 (1956)).

The problem with this analysis is that it focuses on one aspect of the conduct proscribed by section 5316, the failure to file a report, to the exclusion of the other element of the offense—the transportation of currency. It is true, as Donahue notes, that it is often helpful to look at the statutory verb in the description of the offense in determining where an offense was committed. *See, e.g.,* 2 Wright, *Federal Practice & Procedure: Criminal 2d* § 302 (1982). However, his choice of "file" in 31 U.S.C. § 5316(a) as the only relevant verb in the section ignores the fact that standing alone the failure to file a report is not unlawful; such failure must be accompanied by the knowing transportation of currency out of the country to become a crime. Although Donahue cites a case, addressing issues other than venue, for the proposition

that " 'the crime which [§ 5316] punishes is not the transportation of more than [$10,-000] in currency out of the United States, but rather the failure to file the required report,' " appellant's brief at 37,[17] the fact remains that absent the transportation or intent to transport the failure to file is unobjectionable.[18] Thus, Count II of the indictment charged that the offense was the transportation of the currency, without the filing of the report.

In view of the foregoing, we agree with the government that the conduct underlying Donahue's conviction on Count II constituted an offense "begun in one district and completed in another" under 18 U.S.C. § 3237(a).[19] The evidence established that Donahue, bearing large sums of currency, on various occasions boarded a plane in Pennsylvania,[20] changed planes in Florida without filing the requisite report, and proceeded on to Grand Cayman Island. In our view, this uninterrupted series of events is properly regarded as one continuing offense for purposes of venue, beginning in Pennsylvania and ending in Grand Cayman Island. *Cf. United States v. Rigdon,* 874 F.2d 774, 779–80 (11th Cir.1989) (venue for failure to file CTR as required by 31 U.S.C. § 5313 not only proper in Washington, D.C., where CTRs can be filed, but also in

---

**17.** Donahue cites *United States v. Rojas,* 671 F.2d 159, 162 (5th Cir.1982). *See also United States v. Warren,* 612 F.2d 887, 891 (5th Cir.) (en banc), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980).

**18.** Moreover, in making his venue argument Donahue relies not upon the language of section 5316 itself, which merely requires a report to be filed "at the time and place the Secretary of the Treasury prescribes," but upon the federal regulations implementing the Act. The fact that Congress did not explicitly designate the place of filing weakens any argument that it intended to restrict venue in the manner Donahue suggests.

**19.** That section provides:
§ 3237. Offenses begun in one district and completed in another
(a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more

than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

**20.** Donahue's airline tickets indicate that he flew from Scranton/Wilkes Barre in the Middle District of Pennsylvania to Philadelphia, then from Philadelphia to Miami, and then on to the Grand Cayman Island. The stop in Philadelphia does not affect the existence of venue in the Middle District of Pennsylvania under our analysis. We, of course, are not concerned with whether venue would have been proper if Donahue had picked up the currency in Miami, rather than leaving Pennsylvania with it.

Northern District of Florida where cash was exchanged for cashier's checks.)

We agree with the government that this case is distinguishable from *Travis v. United States,* 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961), cited by Donahue. In *Travis,* the defendant was charged with filing a false non-Communist affidavit with the National Labor Relations Board in violation of section 9(h) of the National Labor Relations Act, and section 35A of the Criminal Code (since replaced by 18 U.S.C. § 1001). Although the affidavits were filed in Washington, D.C., the defendant was tried in Colorado, where he had executed and mailed them. The Court held that venue lay only in Washington, D.C., rejecting the government's argument that the charged offense was a continuing one under section 3237 beginning in Colorado. The *Travis* court did state that "[w]hen a place is explicitly designated where a paper must be filed, a prosecution for failure to file lies only at that place." *Id.* at 636, 81 S.Ct. at 362. While, viewed in a vacuum, this statement arguably lends support to Donahue's position, in *Travis* "only the single act of having a false statement at a specified place [was] penalized." *Id.* at 637, 81 S.Ct. at 362.[21] Transportation of the document was not an element of the offense in *Travis.* Here, however, as dis-

cussed above, the elements of the offense included not only a failure to file but also the transportation of currency outside of the country, and thus *Travis* is not controlling.[22]

Indeed, the second paragraph of section 3237(a), which has been described as "a specific application of the general provision about continuing offenses in the first paragraph of the section," Wright, *supra,* § 303, expressly provides that offenses involving foreign commerce are continuing and may be prosecuted in any district "*from,* through or into which such commerce ... moves" (emphasis added). We think that for venue purposes, this case is more analogous to those involving the transportation of stolen objects in interstate or foreign commerce than to "one-step crime"[23] cases like *Travis,* where the only act of significance was the false filing. *Cf. United States v. Infanti,* 474 F.2d 522, 527 (2d Cir.1973) (prosecution for transporting stolen stock certificates in foreign commerce in violation of 18 U.S.C. § 2314 proper in district where stolen certificates in possession of co-defendant before transportation began.)[24] While the mere transportation of the currency outside of the country was not unlawful, it became so when coupled with Donahue's failure to file the CMIRs.

**21.** Significantly, the Court noted that section 9(h) provided only that the Board could not make investigations or issue complaints on questions raised by labor organizations unless non-Communist affidavits were filed, and did not *require* the filing of such affidavits. It stated that "[i]f it had, the whole process of filing, including the use of the mails, might logically be construed to constitute the offense." *Id.* at 635, 81 S.Ct. at 361. Here, in contrast to *Travis,* filing *was* required by the applicable regulations.

**22.** A number of courts have limited *Travis* to its particular facts. *See, e.g., United States v. Mendel,* 746 F.2d 155, 165 (2d Cir.1984), *cert. denied,* 469 U.S. 1213, 105 S.Ct. 1184, 84 L.Ed.2d 331 (1985) ("'the decision [in *Travis*] surely was meant to be confined to the facts on the unusual statute involved'" (citations omitted)); *United States v. Herberman,* 583 F.2d 222, 227 (5th Cir.1978) (*Travis* does not mandate that every defendant whose forms are filed in another district must defend there). We also note that

Donahue relies on our decision in *United States v. Valenti,* 207 F.2d 242 (3d Cir.1953), which was approved in *Travis.* For the same reasons we find *Travis* not controlling, *Valenti* is not applicable here.

**23.** *See United States v. Dekunchak,* 467 F.2d 432, 438 (2d Cir.1972).

**24.** We see no reason to hold that the fact that no national boundary had yet been crossed when Donahue left Pennsylvania defeats venue there. While we will assume, *arguendo,* that under 31 U.S.C. § 5316 the offense was not completed in Pennsylvania, undoubtedly the commission of the offense was eventually completed and the transportation in the Middle District of Pennsylvania was an integral part of it. *Cf. United States v. Hankish,* 502 F.2d 71 (4th Cir.1974) (offense of transporting goods stolen from interstate commerce committed as soon as defendants began transporting them, not when they crossed state line, and venue under section 3237 proper in district where transportation began.)

In sum, we hold that Donahue's commission of the offense proscribed by section 5316—the transportation of currency from the United States to a place outside the country without filing a report—began in the Middle District of Pennsylvania, where he boarded the first of the successive flights which ultimately would land him in Grand Cayman Island, and that venue was proper there, even assuming that the report required by section 5316 could only have been filed in Miami.[25]

## IV.

Although Donahue voices a variety of other objections to his conviction, we find them to be lacking in merit.[26] Accordingly, we will affirm his conviction on both counts of the indictment.

**25.** Because of our holding it is unnecessary to address the government's alternative argument that Donahue waived his right to challenge venue by not timely raising the challenge.

**26.** Donahue contends that a recorded conversation between himself and Luytjes introduced at trial should have been suppressed under 18 U.S.C. § 2515, which prohibits the use as evidence of certain intercepted wire or oral communications. Although 18 U.S.C. § 2511(2)(c) sets forth an exception to 18 U.S.C. § 2515 when the communication is intercepted by a "person acting under color of law" and "one of the parties to the communication has given prior consent to such interception," Donahue maintains that the exception is inapplicable here because Luytjes did not voluntarily consent to the interception but was misled into doing so by false promises in his plea agreement. Despite Donahue's efforts to characterize his objection as involving Luytjes' consent to the interception, what he is really challenging is the government's authority to grant Luytjes what he indisputably received by virtue of his plea agreement; he maintains, for instance, that the government lacked the authority to compromise Luytjes' civil tax liability in the agreement but does not claim that the government reneged on this promise. We therefore reject Donahue's challenge to his conviction on this basis.

Donahue raises a number of other grounds for reversal of his conviction, including claims that the Assistant United States Attorney should have been recused; that he breached a rule of professional conduct; and that certain hearsay testimony was improperly allowed at trial. We have examined these arguments and find them lacking in merit.

