**UNITED STATES of America**

v.

**\$500,000 IN UNITED STATES CURRENCY [Claimants: Boris Gordin, Anchor Enterprises, Inc., Andrey Kornev, and Saturn Systems Overseas].**

Civ. No. 3:93CV01388 (PCD).

United States District Court,
D. Connecticut.

July 21, 1994.

**14**

Steven David Ecker, James T. Cowdery, Chatigny & Cowdery, Hartford, CT, for

claimants Boris Gordin and Anchor Enterprises, Inc.

Peter R. Ginsberg, Gold & Wachtel, New York City, for claimants Saturn SYS Overseas and Andrey Kornev.

Carl J. Schuman, U.S. Attorney's Office, Hartford, CT, for U.S.

### RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Pending are cross-motions [1] for summary judgment. Absent a genuine issue of material fact, if movant is entitled to judgment as a matter of law, summary judgment should enter. Fed.R.Civ.P. Rule 56(c). Claimants and the government have filed statements of uncontested facts. Local Rule 9(c)(1). No Rule 9(c)(2) statements were filed. The facts stated are found to be uncontested.

*FACTS*

Gordin is President of Anchor. He is a citizen of Latvia. In April, 1992, he opened an account for Anchor at Fleet Bank. In November, 1992, $1,000,000 was transferred by wire from overseas to that account. Immediately, he withdrew that sum in cash. After wire transfers, he withdrew $515,000, $1,060,000 and $1,300,000 on March 23, 1993, April 7, 1993, and May 5, 1993, respectively. He immediately transported the money from New York by FinnAir to Latvia via Helsinki. No International Transportation of Currency or Monetary Instrument Reports (CMIR or Customs Form 4790) were filed. His attorney had apprised him of the law concerning money transported out of the country.

On or about May 11, 1993, $500,000 was transferred by wire into Anchor's account. Its money was then withdrawn by Gordin in $100 bills which he carried in a briefcase. He carried Anchor's money as its president. He went to Bradley Airport, in Windsor Locks, Connecticut to board a TWA flight to Kennedy where he was booked to fly by FinnAir to Helsinki. As he was about to board at Bradley, carrying the briefcase, he was questioned by airport authorities as to his bags, one of which contained paint thinner. A check of the luggage disclosed the $500,000. He told law enforcement agents of

1. Claimants Gordin and Anchor moved for summary judgment, a motion adopted and joined by claimants Saturn and Kornev.

his flight plan. He had no CMIR form. He stated no intention of filing such in interviews on May 11 and 12, the latter with his lawyer present and largely speaking for him. The $500,000 was seized.

FBI Agent McKenna further states that at Kennedy signs and announcements advise of the law requiring CMIR filing.

*PROCEEDINGS*

Except for the fact that the money came from Anchor's bank account and was in the possession of Gordin, the record reflects no facts specifying the interests of claimants, but standing is not at issue. The $500,000 was seized. This action followed under 31 U.S.C. § 5317(c).[2] Claimants argue there was no probable cause to seize or forfeit the $500,000. Probable cause for the seizure and forfeiture is dependent on an obligation to file a report as required by § 5316 which provides, in pertinent part:

> (a) .... [A] person or an agent or a bailee of the person shall file a report under subsection (b) of this section when the person, agent or bailee knowingly—
>
> (1) transports, is about to transport or has transported, monetary instruments of more than $10,000 at one time—
>
> (A) from a place in the United States to.... a place outside the United States;

It is the government's claim that, at the time of the seizure at Bradley, there was probable cause to believe that Gordin was attempting to transport the $500,000 from Bradley to a place outside the United States without filing a report, and thus the seizure, and now the forfeiture would be warranted in law.

The government's claim of probable cause is best tested by analyzing the elements and evidence in support thereof:

a) Gordin was transporting. In a physical sense, this is not seriously disputed. The money was in a briefcase he was carrying.

b) He knew what he was carrying and the requirements of the law. This also is not disputed. *See United States v. $359,500 in*

*United States Currency*, 828 F.2d 930 (2d Cir.1987).

c) Money in the amount of $500,000 (over $10,000) was involved. This also is not disputed.

d) Gordin was attempting to transport from Bradley. This is in dispute.

e) Gordin was transporting, or about to transport, to a place outside of the United States. It is unquestioned but that Gordin was embarked on a journey that would end outside of the United States. In a literal sense he could be found to have been about to transport. The dispute, *i.e.* Gordin's contention, is that he had not begun to transport, nor was he about to transport the money to a point outside of the United States because he had not journeyed so far as to have become obliged to file the report.

*DISCUSSION*

The first question is whether § 5316(a) literally applies. When a person conceives of transporting over $10,000 out of the country and takes the first step in a continuum that will lead to the actual transport out of the United States, he could be said to have been about to transport. The phrase, "about to transport" connotes a course of action with no precise delineation of the starting point. The reach of § 5316(a) extends from the start to the finish, using the futuristic "about to transport," the present "transport" and the past "has transported." It is not insignificant that Congress deleted the phrase "attempts to transport or have transported" and substituted the phrase "about to transport". Pub.L. 99–570, § 1358(b). It thus injected a time spectrum for the targeted course of action but imprecisely. The test applied to attempts, *i.e.* whether a "substantial step" toward performing the act in question was taken, *United States v. Martinez*, 775 F.2d 31, 35 (2d Cir.1985), is arguably analogous.

> Any property, real or personal, involved in a transaction or attempted transaction in violation of section 5324(b) may be seized and forfeited to the United States Government.

---

**2.** That section provides, in pertinent part:
> If a report required under section 5316 with respect to any monetary instrument is not filed...... the instrument.... may be seized and forfeited to the United States Government.

Whether Gordin had acted as to require filing a report is significant because there was clear evidence that he had no intention of doing so. At the seizure, he had $500,000 in hand and was embarking on a trip to end outside the United States. From his prior trips, there was a pattern of cash withdrawn and ending up outside the United States. It could readily be inferred that he would fly from Bradley to Kennedy and then, by FinnAir, to Helsinki taking the $500,000 with him. As he had not done so in the past, he had not prepared, nor did he intend, to file the required report. His knowledge of the requirement is readily inferable from the counsel of his attorney and signs at Kennedy announcing the requirement.

Application of § 5316(a) is assisted by (b) which provides:

(b) A report under this section shall be filed at the time and place the Secretary of the Treasury prescribes.

This was intended to authorize the Secretary "to specify events in advance of departure which would trigger the duty to file the report." H.R.Rep. No. 99–855, 99th Cong., 2d Sess., pt. 1, at 19 (1986). Thus, Congress has been held to have intended to authorize the Secretary "to require the filing of currency reports well in advance of a person's actual departure from the United States." *United States v. Bareno–Burgos*, 739 F.Supp. 772, 780 (E.D.N.Y.1990). As there discussed, the Secretary failed to exercise the full authority by stating precisely the point at which the duty would be fixed. *Id.*, citing the then version of 31 C.F.R. § 103.-27(b)(1), (3). That version, unchanged to May 11, 1993 and to date, fails to specify events or a time before departure at which the duty to report is triggered. The regulations in effect on May 11, 1993, require a report by one who physically transports or attempts to transport (31 C.F.R. § 103.23(a)) over $10,000, to be filed at "the time of departure" (31 C.F.R. § 103.27(b)(1)) "with the Customs Officer in charge at any port of entry or departure." (*id.* at (b)(3)). Thus a "temporal and spatial proximity to [the] actual point of departure" is necessary for the duty to file to arise. *Mercado v. U.S. Customs Service*, 873 F.2d 641, 646 (2d Cir.1989);

*United States v. Bareno–Burgos*, 739 F.Supp. at 781–82 and cases cited. One in Gordin's posture, enplaning in New York for a flight to Miami, on a ticket to Colombia with a change of plane in Miami, "would [highly likely] carry through with these plans." *Id.* The requirement has been described as conduct manifesting "a definite commitment to leave the country," *United States v. Cutaia*, 511 F.Supp. 619, 625 (E.D.N.Y.1981). *See United States v. Jenkins*, 689 F.Supp. 342, 343 (S.D.N.Y.1988), *rev'd in part on other grounds*, 876 F.2d 1085 (2d Cir.1989). A "transport" has been found to have commenced in Pennsylvania, for venue purposes, *United States v. Donahue*, 885 F.2d 45, 52 (3d Cir.1989), but that case did not decide the obligation to file question where the flight to a point outside the United States was to commence in Miami. The statutes, absent any contrary regulation promulgated by the Secretary, do not clearly require the filing upon boarding a domestic flight which connects elsewhere with an international flight. *United States v. Bareno–Burgos*, 739 F.Supp. at 783.

The government argues that the seizure was nonetheless valid. It claims that Gordin attempted a transaction in violation of 31 U.S.C. § 5324(b). As property involved in such a transaction, the $500,000 was forfeitable under the second sentence of 31 U.S.C. § 5317(c), added in 1992, which provides:

Any property, real or personal, involved in a transaction or attempted transaction in violation of section 5324(b) ... may be seized and forfeited to the United States Government.

Section 5324(b) prohibits evasion of the § 5316 reporting by failing to file, or causing or attempting to cause a failure to file. The government does not justify the seizure and forfeiture on the failure to file the report. Rather it relies on the fact that the $500,000 was personal property "involved in a transaction, or attempted transaction in violation of § 5324(b)." § 5317(c). It argues that Gordin had gone so far in carrying out a transaction, transporting $500,000 from Anchor's account in Connecticut to a point outside the United States without filing the required report, as to constitute an attempt. Arguably

he attempted to violate the reporting law, §§ 5316(a)(1), 5324(b), and the property involved was therefore subject to seizure and forfeiture. § 5317(c). Arguably, Anchor's money was in Gordin's hand as Anchor's bailee or agent such that it was "being transported from the time the instrument [was] delivered to the.... messenger or bailee through the time it is delivered to the addressee [or] intended recipient." § 5317(c).

■ Though informed by counsel as to the law which pertained, none of Gordin's four transports, totaling $3,875,000, were reported. Against that backdrop, the evidence showed Gordin withdrawing $500,000, which had just been wired into Anchor's account, in cash, about to enplane to Kennedy and scheduled to depart Kennedy, shortly after arriving, for Helsinki. At the seizure, Gordin had no reporting form. He did not then, nor to this date, suggest that he would have reported the $500,000 being transported. He had placed the withdrawn cash in his bag, purchased tickets and arranged flights from Bradley to Kennedy to Helsinki. He was boarding the plane for the first leg of his journey to Latvia with the money. With all the information known at the time, it was well within the bounds of proper inference that Gordin's intended course of action was to carry the money out of the country without reporting. § 5316(a).

■ An attempt occurs when one acts in a substantial way to achieve an intended course of action, here the movement of the $500,000 from Connecticut to Latvia without reporting it. To have attempted that transaction, more than mere planning is required. There must have been a substantial step, an overt act, furthering the intended activity. An attempt occurs when one "sufficiently manifested [his] intent to commit a particular substantive offense yet failed to consummate the crime." *United States v. Jenkins,* 943 F.2d 167, 173 (2d Cir.) *cert. denied,* —— U.S. ——, 112 S.Ct. 659, 116 L.Ed.2d 751 (1991). It is "acting with the kind of culpability otherwise required for the commission of the crime ... Then, the defendant must have engaged in conduct which constitutes a substantial step toward commission of the crime, conduct strongly corroborative of the firm-

ness of the defendant's criminal intent." *United States v. Stallworth,* 543 F.2d 1038, 1041–42 (2d Cir.1976); *United States v. Martinez,* 775 F.2d 31, 35 (2d Cir.1985); *see United States v. Coplon,* 185 F.2d 629, 633 (2d Cir.1950), *cert. denied,* 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952); *United States v. Mandujano,* 499 F.2d 370 (5th Cir.1974), *cert. denied,* 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975); American Law Institute Model Penal Code § 5.01.

■ Gordin had not yet flown to New York nor had he boarded the FinnAir flight out of New York. He did however take enough of the steps in the process of transporting the money out of the country to meet the first test. What steps he did take were a very substantial part of the spectrum of conduct which would have led to the commission of the offense.

His commitment to violate the law is assessed against the backdrop of his prior trips. In precisely the same way, Gordin on four prior occasions took money from the account, traveled with it to New York and there boarded flights to Latvia via Finland, carrying the money, each time without filing the required report. His attorney's instructions as to the law did not prompt him to file any reports after the flights. His acts on May 11, 1993 not only constituted substantial steps which furthered the violation of the law, but demonstrated his commitment to doing so.

■ Claimants claim an absence of an obligation to file when Gordin was at Bradley. In this they are probably correct but that claim is insufficient. They argue that the statutes do not support forfeiture based on an attempt absent an obligation to file. That ignores the government's claim that Gordin attempted to engage in a transaction which, had it been completed, would have constituted a violation of the law, *i.e.* a transportation of the $500,000 out of the country without filing the required report. Nothing in their language, nor their interrelationship sustains the argument that §§ 5316(a), 5317(c) and 5324(b) apply only to a failed attempt. Words should be given their normal meaning absent a showing of a different

intent. *United States v. Goldberger & Dubin, P.C.,* 935 F.2d 501, 506 (2d Cir.1991). The argument fails to accommodate the fact that an attempt does not require that the conduct succeed in violating the law. It is axiomatic that an attempt falls short of actual violation. If a course of action creates an obligation to file and no report is filed, the conduct is no longer an attempt, it is an actual violation. A person is not excused from attempting to violate a law because of a failure to complete the violation. Gordin's alleged right to believe that at Bradley he was under no obligation to file does not excuse him from liability for attempting to take the money out of the country without reporting it. As Judge Kaufman wrote, the law of attempts avoids the necessity of law enforcement officials awaiting the consummation of a violation of the law before acting. Rather they are permitted to act short of a completed violation if the conduct reaches a point where an attempt has occurred. *United States v. Stallworth,* supra.

For all the forgoing reasons, it is found that there was probable cause, on May 11, 1993, at Gordin's interception and the seizure at Bradley Field, for the belief that, acting for Anchor, Gordin's conduct constituted an attempted transaction violative of § 5324(b) and in turn § 5316(a). The seizure and the forfeiture based thereon are found authorized under § 5317(c).

*CONCLUSION*

Accordingly, the government's motion for summary judgment (doc. # 24) is granted and claimants' motion (doc. # 17) is denied.

SO ORDERED.