The UNITED STATES

v.

Arthur G. BESMAJIAN, Jr.,
William J. Amwake.

Appeal of UNITED STATES of
America, Appellant.

No. 89–3775.

United States Court of Appeals,
Third Circuit.

Argued May 15, 1990.

Decided Aug. 9, 1990.

**1154**

Thomas W. Corbett, Jr., U.S. Atty., Constance M. Bowden (argued), Asst. U.S. Atty., Pittsburgh, Pa., for appellant.

Frank H. Wright, Allison Manning (argued), Wright, Manning & Rips, New York City, for appellee, William Amwake.

Alfred C. DeCotis, William R. Lundsten, DeCotis, Frino and Lundsten, Roseland, N.Y., for appellee, Arthur Besmajian, Jr.

Before MANSMANN, SCIRICA and WEIS, Circuit Judges.

OPINION OF THE COURT

MANSMANN, Circuit Judge.

The government brings this appeal from a district court order dismissing three counts of an indictment for failure to allege a prosecutable offense against a bank's customers under the currency transaction reporting laws of the United States. Specifically, we must decide whether a statutory duty was imposed upon a financial institution in 1986 to report a customer's daily transactions occurring at its different branches, which, when aggregated, total in excess of $10,000.

The indictment charged Arthur Besmajian and William Amwake, employees of the Pittsburgh office of First Jersey Securities, with thirteen violations arising from the currency reporting requirements of the Currency Transaction Reporting Act, 31 U.S.C. §§ 5313 (*as amended* 1982). On appeal, we are concerned with counts 11, 12 and 13 of the indictment which charge the defendants with causing a financial institution, Horizon Financial Bank, to fail to file currency transaction reports ("CTRs") with the Internal Revenue Service in violation of 31 U.S.C. §§ 5313 and 5322(a) and 18 U.S.C. § 2. The district court dismissed these counts, concluding that they failed to state a prosecutable offense.

We decide this question of law to the contrary. The counts of the indictment which charge the defendants with inten-tionally structuring reportable cash transactions to avoid the statutory filing requirements sufficiently allege facts which constitute a crime against the United States. Our decision in *United States v. American Investors of Pittsburgh, Inc.,* 879 F.2d 1087 (3d Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 368, 107 L.Ed.2d 354 (1989), does not compel a different result. We, accordingly, will vacate the decision of the district court and remand for trial on counts 11, 12 and 13 of the indictment.

I.

In considering a defense motion to dismiss an indictment, the district court accepts as true the factual allegations set forth in the indictment. *See Boyce Motor Lines v. United States,* 342 U.S. 337, 343 n. 16, 72 S.Ct. 329, 332 n. 16, 96 L.Ed. 367 (1952). On our review of the dismissal of an indictment on a legal basis, we read the indictment as it was construed by the district court. *United States v. International Union United Automobile Aircraft and Agricultural Implement Workers of America,* 352 U.S. 567, 584, 77 S.Ct. 529, 537, 1 L.Ed.2d 563 (1957). We set forth the facts with that scope of review in mind.

In the spring of 1986, Arthur Besmajian and William Amwake were employees of the Pittsburgh office of First Jersey Securities, a retail brokerage house registered with the Securities and Exchange Commission. Amwake was employed as the regional vice president and Besmajian was the branch manager. The indictment also alleged that both defendants were account executives involved in the purchase of securities by customers of First Jersey Securities.

The Internal Revenue Service began investigating Besmajian in January of 1986 in connection with suspected federal currency reporting laws violations. On March 20, 1986, an undercover agent for the Internal Revenue Service, using the alias Samuel Russo, met with Besmajian and represented that he had a large sum of money, obtained from an illegal gambling operation, which he wished to invest through

Besmajian. The agent gave Besmajian $30,000 in cash in exchange for a receipt signed by Besmajian on behalf of First Jersey Securities. The receipt indicated that Russo had provided Besmajian with a cashier's check for $30,000, rather than the cash actually received.

On the following day money orders in the amounts of $5,000 and $4,900 were purchased at Horizon Financial Bank. On March 25, 1986, an identical transaction occurred. On March 26, 1986, two bank checks in the amounts of $5,100 each, made payable to First Jersey Securities, were purchased again at Horizon Financial Bank. On March 26, 1986, these cashier's checks and bank checks were entered into the Russo account established at First Jersey Securities in Pittsburgh. Then, on or about March 27, 1986, a monthly statement from First Jersey's New York office was sent to the agent indicating check payments of $4,900, $5,000, $5,100, $5,100, $5,000 and $4,900 into his account. A few days later, copies of the checks and money orders purchased from Horizon Financial on the three dates in March and made payable to First Jersey Securities were sent to the agent at the address which he provided to Besmajian.

Three similar transactions between Besmajian and the undercover agent occurred. On April 4, 1986, the agent met again with Besmajian, providing him with $40,000 in cash for the purchase of securities. Then, on May 22, 1986, a different undercover agent met with Besmajian, exchanging $45,000 in cash for securities. The two agents met with both Besmajian and Amwake on April 17 when $40,000 in cash was paid for securities.

In a typical transaction, the cash received from the undercover agents was converted by Besmajian and Amwake into money orders and bank checks purchased from various financial institutions. These negotiable instruments were then deposited into the agent's account and entered into the daily transaction records of the Pittsburgh branch of First Jersey Securities. The money orders, checks and records were then sent to the New York branch of First Jersey Securities with copies of the checks sent to the undercover agent. The ledger account statements from the New York office reflect that the securities were purchased by check.[1] Currency transaction reports ("CTRs"), required by 31 U.S.C. § 5313(a) and 31 C.F.R. 103.22(a)(1) in instances when cash transactions in excess of $10,000 occur, were not filed by either First Jersey Securities or Horizon Financial Bank in connection with the cash received by Besmajian and Amwake from the undercover agents.

On September 7, 1989, a thirteen-count superseding indictment was returned against the defendants. Count 1 charged Besmajian and Amwake with conspiring to obstruct the lawful function of the Internal Revenue Service; Counts 2 through 5 charged Besmajian and Amwake with failing to file and causing a financial institution, First Jersey Securities, to fail to file CTRs; Counts 6 through 10 charged Besmajian and Amwake with causing false statements to be made on the records of First Jersey Securities.

Counts 11 through 13, the concern of our inquiry today, charge Besmajian and Amwake with causing another financial institution, Horizon Financial Bank, to fail to file CTRs with the Internal Revenue Service in violation of 31 U.S.C. §§ 5313 and 5322(a) and 18 U.S.C. § 2. Specifically, count 11 alleges that on April 9, 1986, two American Express money orders, with a value of $4,900 and $5,000 respectively, were purchased at Horizon Financial's Fox Chapel (a suburb of Pittsburgh) branch. Two additional American Express money orders, for $4,900 and $5,000 each, were purchased at Horizon Financial's Oakmont (also a Pittsburgh suburb) branch that same day. Thus, each Horizon Financial branch transacted purchases in currency for $9,900 on the same day. For the aggregate amount of $19,800, the government

---

1. On May 13, 1986, Besmajian contacted one of the undercover agents and relayed a request from Amwake that the agent write a letter stating that the agent had financed his purchases with First Jersey, actually transacted with cash, by cashier's checks.

claims Horizon Financial had a statutorily imposed reporting obligation for that day—April 9, 1986—which was not fulfilled.

Count 12 alleges that on April 21, 1986, two American Express money orders, made payable to First Jersey Securities, were purchased at each of the two Horizon Financial branches—one for $4,900 and one for $5,000 at each branch. Again, each branch transacted purchases totalling $9,900. In combination, however, Horizon Financial once again received $19,800 in currency on a single day which it failed to report.

In count 13, concerning only Besmajian, the government charges that on May 30, 1986, one check and three American Express money orders were purchased at Horizon Financial branches: money orders for $4,900 and $5,000 at the Oakmont branch, one check for $9,900 at the Fox Chapel branch, and a $5,000 money order at a third branch. No single Horizon Financial branch transacted purchases with currency in excess of $10,000; yet on this day Horizon Financial received a total of $24,800 in cash from Besmajian for these five transactions.

Prior to trial Besmajian and Amwake moved to dismiss counts 1 through 5 and 11 through 13 of the indictment on the ground that those counts failed to allege an offense under the currency transaction reporting laws. The district court denied the motion with respect to counts 1 through 5, but granted the motion concerning counts 11 through 13 which charged Besmajian and Amwake with violating those same transaction laws by willfully causing Horizon Financial Bank to fail to file CTRs.

Germane to the district court's conclusion was its reading of our opinion in *United States v. American Investors of Pittsburgh*, 879 F.2d at 1099–1106 n. 18, which although not specifically addressing the types of transactions occurring *sub judice*, did posit in a footnote that multiple transactions under $10,000, which, when aggre-

gated exceed $10,000, may not be subject to the reporting laws if they occur at different branches of the same bank. The district court construed this footnote as compelling a holding that same day/same bank/different branch transactions are not subject to the reporting requirements. Horizon Financial thus lacked the requisite legal capacity to commit the crime of failing to file CTRs as alleged in counts 11, 12 and 13. Because the common denominator of the bank's duty to file was absent, Besmajian and Amwake could not be found guilty of causing illegal conduct.

The government has appealed the dismissal, contending that aggregation of same day exchanges made at different branches of the same bank was required by the currency laws in effect at the time of the alleged criminal activity. The government asserts that Besmajian and Amwake deliberately structured cash transactions to avoid the filing requirement, committing a prosecutable offense under the law.

We are thus squarely presented with the question we flirted with in a footnote in *American Investors*—whether the reporting laws do in fact require that same day/different branch transactions be aggregated when determining culpability under the Reporting Act.

Our jurisdiction is premised on 18 U.S.C. § 3731 and our review is plenary.

## II.

Prior to its 1986 amendment,[2] the relevant text of the currency reporting law provided that:

When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency ... in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transac-

2. Under the amended statute, not applicable here, the currency transaction reporting law was clarified to specify that no person may cause or attempt to cause a financial institution to fail to file reports required by 31 U.S.C. § 5313(a). *See* 31 U.S.C. § 5324 (West Supp. 1990).

tion at the time and in the way the Secretary prescribes....

31 U.S.C. § 5313(a).

The pertinent regulation in effect at the time of the charged conduct, outlining the requirements for the filing of reports for currency transactions, read:

§ 103.22 Reports of currency transactions.

(a)(1) Each financial institution other than a casino shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution, which involves a transaction in currency of more than $10,000.

31 C.F.R. § 103.22(a)(1) (1986). A "transaction in currency" was defined as "[a] transaction involving the physical transfer of currency from one person to another." 31 C.F.R. § 103.11(1). These transactions must be reported on Internal Revenue Service Form 4789, commonly referred to as a currency transaction report (CTR). A crime is committed when one willfully fails to file a CTR. 31 U.S.C. § 5322(a).

In *United States v. Mastronardo*, 849 F.2d 799 (3d Cir.1988), we held that *customers* of financial institutions were not required to file CTRs by the currency laws then in effect. We then amplified our *Mastronardo* holding in *United States v. American Investors of Pittsburgh*, 879 F.2d at 1097–1100. While reaffirming *Mastronardo*'s general holding that customers cannot be held liable to file CTRs under the currency laws, we decided that customers can be held criminally responsible, pursuant to a tandem 18 U.S.C. § 2(b) charge, for willfully and knowingly causing the financial institution to fail to comply with the currency transaction reporting requirements. Key to our decision in *American Investors* that the customer defendants were liable criminally was that the finan-

cial institution itself must have a duty to report the underlying transactions which form the basis of the charges. *Id.* at 1097.

Thus, in the matter *sub judice*, we restate the question posed in *American Investors*—did the financial institution here, Horizon Financial Bank, have the duty to aggregate the same day/same bank/different branch activity of Besmajian and Amwake and file CTRs in regard to those transactions?

The district court answered this query in the negative based upon its reading of our footnote in *American Investors*, 879 F.2d at 1099–1100 n. 18.[3] In *American Investors*, save one count of the indictment, our concern was focused exclusively upon same day/same bank/same branch transactions. Footnote 18 referenced the one count of that indictment in which a different branch was involved. We there noted that this type of activity was different from our overall description of reportable activity defined by the facts of that case. Because we were chiefly concerned with the problem which arises when the same branch of the same bank is involved, we premised our analysis on that specific activity. In that vein, we were quite cautious to state that our holding was dictated by its particular facts. Thus, although it is certainly understandable why the district court dismissed the indictment based on the footnote's language, we conclude that the footnote indicates only that we need not—and thus did not—reach the question of whether a financial institution has a duty to report same day multiple occurrences at its different branches aggregating in excess of $10,000. Our reference to a possibility that a transaction such as the one above described could be "fatal" under our holding in *American Investors* is traceable only to the confined factual scenario under which we analyzed the statute and regulations

---

**3.** The footnote reads as follows:

We note that Incident No. 14 in Appendix 1 refers to an occasion when American Investors utilized two different branches. A single deposit at one of the branches was under $10,000. Although this might appear to take this particular transaction out of our description of reportable activity, because the multi-

ple deposit at the other branch occurring on the same day did fall within our description, i.e, two under $10,000 individual transactions, which, when aggregated, totalled over $10,000, the different branch activity of one transaction under $10,000 is not fatal to that count of the indictment.

*American Investors*, 879 F.2d at 1099–1100 n. 18.

and applied them to the specific activity of the players in the *American Investors* drama.

We now undertake an analysis of the currency reporting laws in the context of Horizon Financial's reporting duties and the specific activities of Besmajian and Amwake.

### III.

Financial institutions are generally required to file a report of a transaction in currency of more than $10,000. 31 C.F.R. § 103.22(a). A financial institution is defined as "each agent, agency, branch or office within the United States of any person doing business" in certain capacities, including a bank. 31 C.F.R. § 103.11(g). The regulations define "bank" as

[e]ach agent, agency, branch or office within the United States of any person doing business in one or more of the capacities listed below.

(1) A commercial bank or trust company organized under the laws of any state or of the United States;

\* \* \* \* \* \*

31 C.F.R. § 103.11(a).

Horizon Financial's scope of duty turns on whether the definitions compel a bank to report same day cash transactions by a customer occurring at any of its branches, which, when aggregated, exceed $10,000.

 We hold that a fair reading of the regulations imposes a duty to report same day/different branch structured transactions and that failure to do so may implicate criminal liability under the reporting laws. In so concluding, we remain cognizant of the important principle that criminal statutes must be strictly construed in order that due process not be offended. *United States v. Mastronardo,* 849 F.2d at 805. We are satisfied that, even under this heightened scrutiny, the regulations here meet this rigorous standard by delineating "the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

 The regulations define a bank as including its branches. Banks are financial institutions required to report transactions in excess of $10,000 of which they are aware. The clear implication from the language of the regulations is that if a bank is aware that a customer is utilizing its various branches to transact cash dealings which exceed $10,000 when aggregated on a daily basis, it must file a CTR in regard to these transactions. Thus, here, the different branch activity triggered Horizon Financial's reporting duty. Besmajian's and Amwake's structuring of its purchases to cause Horizon Financial to fail to file CTRs is therefore prosecutable under the Act.

Other courts of appeals have interpreted the regulatory definitions to impose this obligation. In *United States v. Giancola,* 783 F.2d 1549, 1552 (11th Cir.), *cert. denied,* 479 U.S. 1018, 107 S.Ct. 669, 93 L.Ed.2d 721 (1986), the Court of Appeals for the Eleventh Circuit determined that the term "financial institution" encompasses a bank, including each of its branches. The court, adopting the reasoning of *United States v. Sanchez Vazquez,* 585 F.Supp. 990, 993 (N.D.Ga.1984), concluded that if a financial institution, interpreted as a bank or any one of its branches, is aware of cash transactions in excess of $10,000 on a particular day, the bank or branch must file a CTR in regard to those transactions. The court then held that "multiple cash transactions at different branches" of the same bank implicate the reporting laws. The court reaffirmed *Giancola* in subsequent cases. *See United States v. Cure,* 804 F.2d 625 (11th Cir.1986); *United States v. Lafaurie,* 833 F.2d 1468 (11th Cir.1987); and, *United States v. Meros,* 866 F.2d 1304 (11th Cir.1989). Other courts of appeals are in concurrence. *See United States v. Abner,* 825 F.2d 835, 838 n. 5 (5th Cir.1987) (even if split between different branches and involving increments of less than $10,-000, transaction aggregating more than $10,000 at one bank on one day is reportable); *United States v. Richeson,* 825 F.2d 17, 19 (4th Cir.1987) (structuring daily deposits over $10,000 into less than $10,000

multiple deposits at separate branches violates reporting law).

Some of our sister courts of appeals, however, although not specifically addressing same day/different branch transactions, indicate a reluctance to expand liability under the reporting laws. *See United States v. Risk*, 843 F.2d 1059, 1062 (7th Cir.1988) (bank has no legal duty to aggregate multiple exchanges of under $10,000); *United States v. Heyman*, 794 F.2d 788, 792 (2d Cir.1986) (transactions occurring on different days at same bank do not invoke reporting requirement).

Recently, in *United States v. St. Michael's Credit Union*, 880 F.2d 579 (1st Cir.1989), the Court of Appeals for the First Circuit concluded that financial institutions have no duty to aggregate into one reportable transaction separate physical transfers of currency made at different times on the same day. The court reasoned that only simultaneous activity, and not a course of dealing construed as "multiple" in nature, is encompassed by the regulation's definition of a transaction in currency reportable under the Act. The court defined the particular activity of the defendant before it, in cashing smaller checks which exceeded $10,000 at different times, as multiple transactions and thus the financial institution's reporting obligations under the Act were not triggered. *Id.* at 596–97.

The precise timing of multiple transactions is to us too tenuous a determinant of imposition of a duty to aggregate. In *American Investors*, quoting the district court in *United States v. Shearson Lehman Brothers, Inc.*, 650 F.Supp. 490 (E.D. Pa.1986), *aff'd in part, rev'd in part, United States v. Mastronardo*, 849 F.2d 799 (3d Cir.1988), we stated that the relevant statutory scheme imposed a duty on banks to report any transactions exceeding $10,000. We observed that the defendants did not cause the bank to breach its duty when they entered the bank with structured transactions. Rather, they caused the bank to violate the law at the earlier point when they broke up the transactions to avoid the CTR filing requirement. The

same is true here. Although there was direct evidence that the *American Investors* defendants and the financial institution involved were aware of the bank's reporting obligation, here the actions of Besmajian and Amwake in breaking up the transactions to amounts just under $10,000 and the acts of depositing the funds at different branches clearly imply deliberate calculation to thwart Horizon Financial's reporting duty. On most occasions there was a deliberate coverup of the cash nature of the money given to Besmajian by the agent; Besmajian indicated instead that a cashier's check was received. Also, there is a request made by Besmajian that the agent sign a statement indicating that his purchases through First Jersey Securities were by check and not by cash. We point out too that Besmajian and Amwake were employees of First Jersey Securities, a financial institution with reporting duties identical to Horizon Financial and that this creates a strong presumption that Besmajian and Amwake were on notice of all reporting requirements imposed by the law. We therefore conclude that the transactions engaged in by Besmajian and Amwake, as alleged in the indictment, violated the Currency Transaction Reporting Act.

IV.

We turn to the government's alternative argument that the language of the CTR itself, Form 4789, compels a finding of reportability of same day/different branch transactions. The form states that:

> multiple transactions by or for a person with one bank on a single day which totalled over $10,000 should be reported as a single transaction if the financial institution is aware of them.

The supplemental instructions to the form read:

> If the financial institution is aware that an individual organization has conducted a series of currency transactions in one day at the financial institution or at different branch offices of the financial institution totalling more than ten thousand ($10,000) a report shall be filed following such transactions. . . .

In *American Investors,* 879 F.2d at 1098, we referred to the discussion of the district court in *Shearson Lehman Brothers,* 650 F.Supp. at 497, that the language of Treasury Form 4789 could not augment the definitions as provided in the regulations. We agree that the instruction on the form is "a legislative rule promulgated without the required notice and comment procedure, and therefore is ineffective in the context of a criminal prosecution." *Shearson Lehman Brothers,* 650 F.Supp. at 496. Therefore, we do not premise the defendant's potential liability upon the language of Form 4789 but choose instead to rely on the regulations.

The language of Form 4789 does, however, have impact in a different way. Effective May 8, 1987, 31 C.F.R. § 103.22 was amended to state:

> Multiple currency transactions shall be treated as a single transaction if the financial institution has knowledge that they are by or on behalf of any person and result in either cash in or cash out totalling more than $10,000 during one business day.

The purpose in the change of the language of the regulation was to clarify situations where a CTR had to be filed in case of multiple exchanges of currency and to codify Form 4789's instructions. *See* 51 Fed.Reg. 30,233–34 (1986); 52 Fed.Reg. 11,-436–37 (1987). We have previously noted that, to the extent that a change in language of a pertinent regulation constitutes the clarification of original intent, the clarification is entitled to be given substantial weight by a court in construing that regulation. *See United States v. Ofchinick,* 877 F.2d 251, 257 n. 9 (3d Cir.1989); *United States v. Nottingham,* 898 F.2d 390 (3d Cir.1990).

Although the new regulation does not precisely address whether different branch/same day transactions are reportable, given that the amended regulations' stated purpose was to codify Form 4789's instructions, such a reading is favored. This is also consistent with our construction of the term "financial institution" as including activity at each of its branches.

V.

Finally, it is important that we not be burdened by our novice perception of a bank's technical capabilities to report certain transactions. While it may or may not be difficult for the main office of a financial institution to be aware of each individual branch's transactions, it must be remembered that the bank is only compelled to report such transactions if it is aware of them. We keep in mind that the purpose behind the currency reporting laws is to monitor transactions of those who would have occasion to deal in large amounts of cash, not the financial institutions as innocent intermediaries. The facts in this case allege a transparent pattern by Besmajian and Amwake to avoid the currency laws. It is the defendants' intent we concentrate upon, not the bank's. Here, the facts as alleged in the indictment demonstrate a deliberate evasion of the currency reporting laws.

We will therefore vacate the district court's order dismissing counts 11 through 13 of the indictment and remand this case for trial.