UNITED STATES of America

v.

Philip J. KRASNER; William P. Lozo; Stephen D. Lynch; Stanley V. Bernstein; Jeffrey N. Chudyk; Index Publishing, Ltd.; Pure Images, Inc.; Stage III, Inc.; and Graphic Distributors, Inc., Defendants.

Cr. No. 92–0175.

United States District Court, M.D. Pennsylvania.

July 15, 1993.

Philip J. Krasner, pro se and Paul Cambria, Lipitz, Green, Fahringer, Roll, Salis-

bury & Cambria, Buffalo, NY, for Philip J. Krasner.

William P. Lozo, pro se and Paul Cambria, Lipitz, Green, Fahringer, Roll, Salisbury & Cambria, Buffalo, NY and Arthur Schwartz, Bradley, Reich, and Schwartz, Denver, CO, for William P. Lozo.

Stephen D. Lynch, pro se and Paul Cambria, Lipitz, Green, Fahringer, Roll, Salisbury & Cambria, Buffalo, NY, and J. Michael Murray, Cleveland, OH, for Stephen D. Lynch.

Stanley V. Bernstein, pro se and H. Louis Sirkin, Sirkin, Pinales, Mezibov & Schwartz, Cincinnati, OH, for Stanley V. Bernstein.

Jeffrey N. Chudyk, pro se and Carl Max Janavitz, Pittsburgh, PA, for Jeffrey N. Chudyk.

Index Publishing, Ltd., pro se and John H. Weston, Weston, Sarno, Garrou & DeWitt, Beverly Hills, CA, for Index Pub., Ltd.

Pure Images, Inc., pro se and John H. Weston, Weston, Sarno, Garrou & DeWitt, Beverly Hills, CA, for Pure Images, Inc.

Stage III, Inc., pro se and John H. Weston, Weston, Sarno, Garrou & DeWitt, Beverly Hills, CA, for Stage III, Inc.

Graphics Distributors, Inc., pro se and John H. Weston, Weston, Sarno, Garrou & DeWitt, Beverly Hills, CA, for Graphics Distributors, Inc.

William A. Behe, U.S. Attorney's Office, Harrisburg, PA, Carl Alexandre, U.S. Dept. of Justice, and Janis Kockritz, U.S. Dept. of Justice, CEOS–Crim. Div., Washington, DC, for the U.S.

## MEMORANDUM

NEALON, District Judge.

In this criminal case, predicated upon an alleged scheme to distribute obscene materials, there are several motions to dismiss the superseding indictments the United States (Government) has brought against the defendants.[1] The government seeks to join the offense of money laundering to obscenity, an issue of first impression. The defendants vigorously oppose such action on a variety of constitutional and statutory grounds and, accordingly, have moved to dismiss the indictment. In addition, they have adopted each

---

1. The Government charges included:

*All Defendants—*
Count I; 18 U.S.C. § 371 (conspiracy to distribute obscene materials)
Count II; 18 U.S.C. § 1461–62 (mailing nonmailable obscene matter to "Martz Androws")
Count III; 18 U.S.C. § 1461–62 (mailing nonmailable obscene matter to "Bill Womer")
Count IV; 18 U.S.C. § 1461–62 (mailing nonmailable obscene matter to "Bill Womer")
Count VI; 18 U.S.C. § 1461–62 (mailing nonmailable obscene matter to "Bill Womer")
Count VII; 18 U.S.C. § 1956(a)(1)(A)(i)–(B)(i) and 18 U.S.C. § 1956[a](2) (money laundering—$67.55)
Count VIII; 18 U.S.C. § 1956(a)(1)(A)(i)–(B)(i) and 18 U.S.C. § 1956[a](2) (money laundering—$25.15)
Count IX; 18 U.S.C. § 1956(a)(1)(A)(i)–(B)(i) and 18 U.S.C. § 1956[a](2) (money laundering—$25.15)
Count X; 18 U.S.C. § 1956(a)(1)(A)(i)–(B)(i) and 18 U.S.C. § 1956[a](2) (money laundering—$25.15)
Count XI; 18 U.S.C. § 1956(a)(1)(A)(i)–(B)(i) and 18 U.S.C. § 1956[a](2) (money laundering—$25.15)
*Defendants Krasner, Lozo, Lynch, Bernstein, Chudyk, Pure Images, Stage III, and Graphic Distributors—*

Count V; 18 U.S.C. § 1461–62 (mailing nonmailable obscene matter to "Marty Andrews")
*Defendant Krasner—*
Count XII; 18 U.S.C. § 982(a)(1)[,] (b)(1)(A) (forfeiture count pursuant to 21 U.S.C. § 853(p)
*Defendant Index Publishing—*
Count XIII; 18 U.S.C. § 982(a)(1)[,] (b)(1)(A) (forfeiture count pursuant to 21 U.S.C. § 853(p)
*Defendant Stage III—*
Count XIV; 18 U.S.C. § 982(a)(1)[,] (b)(1)(A) (forfeiture count pursuant to 21 U.S.C. § 853(p)
*Defendant Pure Images—*
Count XV; 18 U.S.C. § 982(a)(1)[,] (b)(1)(A) (forfeiture count pursuant to 21 U.S.C. § 853(p)
*Defendant Graphic Distributors—*
Count XVI; 18 U.S.C. § 982(a)(1)[,] (b)(1)(A) (forfeiture count pursuant to 21 U.S.C. § 853(p)
The superseding indictment was filed on October 19, 1992. By request of the defendants, the setting of a trial date has been postponed until the pretrial conference originally scheduled to be held on April 22, 1993, but postponed by agreement of counsel until July 22, 1993. Additionally, because of the complexity of the issues raised, a general continuance has been granted pursuant to 18 U.S.C. § 3161(h)(8).

others motions[2] and, thus, for purposes of clarity, the court will treat them as though they had been filed collectively. For reasons which follow, the court will deny the defendants' motions to dismiss.

## I.

The superseding indictment alleges the following: Defendant Philip J. Krasner (Krasner) created a series of corporations which distributed obscene materials. As the "beneficial owner of the companies," he oversaw the production, distribution and reaped the financial windfalls of an empire which marketed obscene materials throughout the United States. In furtherance of his scheme, he created a series of sham corporations, with both fictional and unwitting nonfictional directors, who invested and hid the proceeds of his illegal business. He also used the alias "P.J. Craig" to further conceal the workings of his obscenity ventures.

As noted, there were several corporations involved in the scheme. Index Publishing, Ltd., published *Puritan International,* one of the magazines alleged to be obscene. Pure Images, Inc., Stage III, Inc., and Graphic Distributors, Inc. distributed sexually explicit magazines and videotapes through advertising efforts in *Puritan.* William P. Lozo acted as a general manager over the businesses and supervised all employees while Stephen D. Lynch managed the warehouse and the accounting offices for the various corporations. The final two individual defendants, Stanley V. Bernstein and Jeffrey N. Chudyk, were editors of *Puritan International* with the latter carrying the additional duty of distribution director of another of Krasner's corporations not indicted here.

## II. The Motions to Dismiss the Indictment.

The defendants have raised several challenges to the superseding indictment both in its entirety, and to specific counts: the first concerns the alleged pre-signing of the in-

dictment by the United States Attorney; the second, the constitutionality of 18 U.S.C. § 1461, the crime of mailing obscene matter, wherein it does not allow the affirmative defense of mistake of fact; the third asserts that Counts II–VI fail to meet the requirements of the notice provisions of the Fifth and Sixth Amendments; the fourth raises the constitutionality of attaching the money laundering counts to the alleged obscenity violation; the fifth, asserts that the conspiracy count must fail due to the indictment's failure to allege that the defendants knew that they were conspiring to achieve an illegal objective; and, finally, they challenge the forfeiture counts on the same reasoning.

As an initial matter, the court would note that "[i]n considering a defense motion to dismiss an indictment, the district court accepts as true the factual allegations as set forth in the indictment." *United States v. Besmajian,* 910 F.2d 1153, 1154 (3rd Cir.1990) (citing *Boyce Motor Lines v. United States,* 342 U.S. 337, 343 n. 16, 72 S.Ct. 329, 332 n. 16, 96 L.Ed. 367 (1952)). In so doing, the court's inquiry is, of course, whether the indictment properly alleges a criminal offense. *Id.* Each argument will be addressed, *seriatim.*

### A. The Pre-Signed Indictment.

The defense alleges that it has reason to believe that the pre-signing of indictments before presentment to the grand jury is "common practice"[3] within the Middle District of Pennsylvania and unduly influences the outcome of its deliberations. A hearing is requested to determine whether, in fact, the indictment was pre-signed and, if it were, whether each grand juror received a copy of it as well as how long the matter was deliberated upon before the presentment was returned. Because the superseding indictment is 38 pages long and contains numerous counts, the defendants contend that if it were presented to the grand jury pre-signed, the

---

2. The defendants' motions to join in/adopt each others motions were granted by Order dated February 11, 1993.

3. They ground their belief in the fact that once the original indictment had been presented, the

defendants received undated copies of it signed by United States Attorney James J. West, but not by the jury foreperson. However, copies of the superseding indictment did contain both signatures and a date.

jurors had copies of it and, if they deliberated on the matter only a short period of time, it should be dismissed as having been "rubber stamped."

In opposition, the government invokes the " 'long established policy' of secrecy [of grand jury minutes], older than our Nation itself." *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959) *quoting United States v. Procter & Gamble,* 356 U.S. 677, 681, 78 S.Ct. 983, 985, 2 L.Ed.2d 1077 (1958). It contends that the defendants cannot show a "particularized need" for disclosure of the grand jury minutes because their theory that the indictment was too long and complex for a quick presentment of a true bill is too speculative, and amounts to little more than a "hunch," *citing United States v. Wolfson,* 294 F.Supp. 267, 271 (D.Del.1968).

■ It is axiomatic that the need for secrecy in grand jury proceedings has deep roots in our jurisprudence:

> Its establishment in the constitution "as the sole method of preferring charges in serious criminal cases" indeed "shows the high place it [holds] as an instrument of justice." Ever since this action by the Fathers, the American grand jury, like that of England, "has convened as a body of laymen, free from technical rules, acting in secret, pledged to indict no one because of prejudice and to free no one because of special favor." Indeed, indictments may be returned on hearsay, or for that matter, even on the knowledge of the grand jurors themselves. *To make public any part of its proceedings would inevitably detract from its effacy.* Grand jurors would not act with that independence required of an accusatory and inquisitorial body. Moreover, not only would the participation of the jurors be curtailed, but testimony would be parsimonious if each witness knew that his testimony would soon be in the hands of the accused.

*Pittsburgh Plate Glass,* 360 U.S. at 399, 400, 79 S.Ct. at 1237, 1240 (citations omitted) (emphasis supplied). Of course, Rule 6(e) does not provide a blanket prohibition against disclosure of grand jury minutes. Instances which adequately demonstrate a "particularized need" may warrant an inquiry into the minutes of such a proceeding. *Id.* at 400, 79 S.Ct. at 1240. In considering the effects of disclosure, the inquiry extends beyond the particular grand jury at issue to the "effect upon the functioning of future grand juries." *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 221, 99 S.Ct. 1667, 1673, 60 L.Ed.2d 156 (1979).

■ As noted above, the defendants argument is as follows: if the grand jurors received copies of a pre-signed 38–page indictment, and if they spent a "small" amount of time deliberating on the charges it contained, it must follow that the pre-signing of the indictment unduly influenced their decision by encouraging them to "rubber stamp" it. This logic is flawed for several reasons. First, it assumes that an indictment "X" number of pages in length requires "X" amount of time for deliberation to be valid. Applying a formula as a means of ascertaining a meaningful grand jury inquiry is unacceptable. Second, it fails to take into account other factors that might facilitate a prompt return of an indictment such as the fact that the decision of the grand jury does not have to be unanimous; that it merely determines probable cause and not ultimate guilt or innocence; and, along that same vein, the case, as presented to it, is one-sided in favor of the prosecution, uninterrupted by the adversarial atmosphere and formalities of open court. Finally, it incorrectly implies that grand jurors will avoid their sworn duty to carefully deliberate on the charges before recommending them and "rubber stamp" the indictment if given the opportunity to do so.

Thus, because the defendants have not been able to show a direct correlation between the alleged pre-signing of the superseding indictment and the probability of it having been "rubber stamped," the court will not disturb the secrecy of the grand jury minutes as no "particularized need" has been demonstrated by the defendants and, accordingly, their motion will be denied.

**B. The Constitutionality of 18 U.S.C. § 1461.**

■ The constitutionality of 18 U.S.C.

§ 1461 [4] has been contested based upon its failure to allow a defendant to advance the affirmative defense of mistake of fact. The defendants contend that they should be allowed to present evidence that they had a good faith, albeit mistaken, belief that the materials that they shipped would not offend the contemporary community standards of the recipient community. While recognizing the scienter requirement of *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (a defendant need not know the legal status of the material he distributes to be convicted under § 1461; all that is required is that he know the "contents and character" of the material shipped), they argue that *Hamling* created a "gap" between the scienter required in knowing the character and contents of the materials shipped and failing to know that those same materials are *legally* obscene. Thus, the assertion continues that it is constitutionally permissible to demonstrate to a jury the affirmative defense of a "reasonable, good faith belief that the items were not obscene."

■ The gravamen of the government's opposition is that a defense must negate the requisite *mens rea* of a particular element of an offense to be valid. As noted above, the scienter requirement of § 1461, as articulated in *Hamling*, requires knowledge of the contents and character, and not actual knowledge of the legal status, of the allegedly obscene matters shipped. The government insists that the fact that the defendants may have been mistaken as to what would offend the community standards of the destination locale would have no bearing on the issue of whether the defendants knew the contents and character of the materials they shipped, the actual *mens rea* component of the offense. While it may be permissible to assert a mistake of fact defense in the context of whether they knew of the contents and character of the alleged obscene matter, as would

be consistent with *Hamling*, the defense, as the defendants wish to apply it, would, in effect, circumvent *Hamling*'s scienter requirement. It is the government's position that the defendants' constitutional challenge to the statute should be rejected because the proffered mistake, if believed by a jury, would not negate the requisite *mens rea* of the offense.

■ It cannot be disputed that the ultimate question of obscenity is a legal conclusion that is predicated upon certain factual findings. *See Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). The basic question for the trier of fact in an obscenity prosecution is:

(a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra* [408 U.S. 229] at 230 [92 S.Ct. 2245, at 2246, 33 L.Ed.2d 312 (1972)], quoting *Roth v. United States, supra,* [354 U.S. 476] at 489 [77 S.Ct. 1304, at 1311, 1 L.Ed.2d 1498 (1957)]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Id.* 413 U.S. at 24, 93 S.Ct. at 2615. As a practical matter, before sexually explicit materials can be determined to be obscene, a factual finding that the works offend "contemporary community standards" would be required. Once that determination has been made, the prosecution need only prove that the defendant had knowledge of the contents and character of the material distributed.

■ Section 1461 makes it a crime to "knowingly" use the mails to transport "nonmailable" obscene matter. *Hamling* and its progeny have specifically rejected the notion that a defendant's "belief as to the obscenity

---

4. 18 U.S.C. § 1461 reads, in pertinent part:
Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, devise or substance; and—

. . . . .

Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier.

Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section or section 3001(e) of title 39 to be nonmailable, or knowingly causes to be delivered by mail according to the direction thereon .. shall be fined ... or imprisoned ...
18 U.S.C. § 1461.

or non-obscenity of the material" mailed is relevant in a prosecution under § 1461. *Hamling,* 418 U.S. at 120, 94 S.Ct. at 2909. Indeed, *Hamling* specifically rejected the notion that such things as a defendant's failure to "brush up on the law" would excuse him from responsibility for an obscenity violation. The Court further noted that the "evils that Congress sought to remedy would continue and increase in volume if the belief of the accused as to what was obscene, lewd, and lascivious was recognized as the test for determining whether the statute [had] been violated." *Id.* at 120–21, 93 S.Ct. at 2684–85. Although not presented in the context of a constitutional challenge, the United States District Court for Nevada, when faced with a similar request for a mistake-of-fact defense in a § 1462 prosecution ("Importation or transportation of obscene matters," the companion statute to 1461), rejected the defense and noted the following:

> In this case, Defendants request to be allowed to present evidence of their "good faith belief" that the videos would not be patently offensive to the average member of the contemporary Las Vegas community. The court finds that this is merely another way of attempting to present evidence that Defendants did not have scienter as to the legal status of the videos as obscene. The "fact" about which Defendants are claiming to have been mistaken is a fact only in the sense that the jury must decide it. It is not independently or objectively verifiable as is the factual question as to whether an actress is 18 years old [as in *Kantor*]. Defendants recognize this dilemma in their moving papers: "The obscenity offense, and most notably the 'community standards' component of the *Miller* test, is ... intractably subjective: it is impossible for a distributor of erotic material to ascertain in advance whether a prosecutor, judge, or jury may in the future deem those materials offensive under the amorphous notion of 'community standards.' "

*United States v. Levinson,* 790 F.Supp. 1483, 1486 (D.Nev.1992). The issue presented to the *Levinson* court is nearly identical to the one presented here, namely; the defendants seek to present evidence that they had "mistakenly misevaluated the community standards and formed an objectively reasonable belief that such standards would tolerate the materials forming the basis of the charge."[5] The distinction they draw from *Hamling* is little more than a play on semantics. It is undisputed that *Hamling* prohibits a defendant in a § 1461 prosecution from presenting evidence that he was not aware that the sexually explicit items he shipped would violate the *Miller* standard. Here, if a mistake of fact defense is permitted, testimony concerning the defendants' lack of knowledge of the "contemporary community standards" of this district would simply become another means of presenting evidence that they did not know the *legal status* of the allegedly obscene materials that they were distributing, *in direct contravention of Hamling.*

5. The defendants rely heavily on *United States v. United States District Court for the Central District of California (Kantor),* 858 F.2d 534 (9th Cir.1988), in which the majority of a three member panel of the Court of Appeals held that § 2251 (the child pornography statute) was constitutionally deficient for failing to provide a mistake-of-fact defense as concerns a defendant's "reasonable mistake" about the age of the actors/actresses employed in the films or photographs. The Third Circuit Court of Appeals has not directly addressed the issues presented here or in *Kantor* and, thus, absent its guidance, this court is free to reject the holdings of its sister circuits.

Here, *Kantor*'s application is dubious at best. As noted, the decision was not unanimous. In his dissent, Circuit Judge Beezer concluded that "the first amendment does not call for a reasonable mistake defense. As a practical matter, such a defense offers little benefit at great cost." *Id.* at 547. The reasoning that led him to such a conclusion is quite compelling and may eventually prevail. He noted that "[p]ornography is lucrative," and a "pornographer acts at his peril if he fails to complete an accurate investigation of the age of the subjects he employs to produce sexually explicit materials." *Id.* at 546. Similarly, a distributor of potentially obscene materials acts at his peril when he chooses to mail those same items, under the constitutional protections afforded under *Hamling* and *Miller.* To adopt the *Kantor* reasoning and go beyond what has already been provided by the Supreme Court is required neither by precedent nor common sense. *See Schindler v. United States,* 221 F.2d 743 (9th Cir.1955) (jury instruction that it was irrelevant whether or not defendant considered the mailed material obscene upheld by court of appeals).

Accordingly, upon a thorough review of the briefs in support of, and in opposition to, the defendant's motion, the court will deny the defendant's challenge to § 1461 on constitutional grounds.

## C. The Challenge to Counts I and II–VI Based Upon the Fifth and Sixth Amendments.

■■■ The defendants have moved to dismiss Count I and Counts II–VI of the superseding indictment based upon what they allege to be its failure under the notice provisions of the Fifth and Sixth Amendments to include the scienter requirement of *Hamling* in the indicting papers. *United States v. Carll,* 105 U.S. 611, 26 L.Ed. 1135 (1881) (reversal of a bank fraud conviction based upon the indictment's omission to include language to the effect that "the defendant knew the false and counterfeit nature of the forged instrument"), and *United States v. Keith,* 605 F.2d 462 (9th Cir.1979) (reversal of conviction where indictment failed to allege judicially crafted modifications to an involuntary manslaughter statute), has been cited for the proposition that the government here has omitted an essential allegation, the *Hamling* scienter requirement and, because of that omission, the indictment fails to state an offense.

In opposition, the government notes that in *Hamling,* the Court upheld the validity of an indictment which charged an offense tracked in the statutory language of § 1461. In so doing, it opined that "obscenity" is a "legal term of art" which need not be spelled out in an indictment so long as, in other respects, it adequately informs a defendant of the charge against which he must defend. It maintains that, in conformity with the analysis in *Hamling,* all constitutional safeguards have been satisfied.

Upon review of the superseding indictment, and arguments of counsel, the defendants' contention requires little comment. Their authority, while colorably compelling in non-obscenity contexts, simply has no application here. *Hamling* and its progeny represent the present state of the law relative to indictments under § 1461 and this court is bound by their mandates. It is apparent that the superseding indictment not only utilized the statutory language of § 1461, but has gone beyond that by actually listing the names of the magazines and films purchased, the dates, the means, and the costs. This information, when combined with the properly identified statutory provisions is sufficient notice for purposes of the Fifth and Sixth Amendments. The Constitution does not require more. *See United States v. Zangger,* 848 F.2d 923 (8th Cir.1988); *United States v. Treatman,* 399 F.Supp. 258 (D.La.1975). The defendants' motion to dismiss Count I and Counts II–VI of the superseding indictment, based upon an alleged violation of the Fifth and Sixth Amendments, will be denied.

## D. The Motion to Dismiss Counts VII–XI (The Money Laundering Counts).

■■■ The defendants attack the government's pursual of money laundering violations (18 U.S.C. § 1956) on the ground that the indictment has failed to allege that, at the time of the alleged illegal depositing of the funds, the defendants *knew* that the money represented proceeds of "illegal" or "unlawful" activity. In particular, they argue that to be properly indicted under § 1956, there would have to be a prior judicial determination that the materials at issue were obscene due to what they contend is money laundering's higher scienter requirement.[6] The assertion continues that because the money laundering statute requires that a defendant

---

6. The money laundering statute reads, in pertinent part:

 **§ 1956. Laundering of monetary instruments**
 (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

 . . . . .

 (c) As used in this section—

 (1) the term "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" means that the person knew the property involved in the transaction represented proceeds of some form, though not necessarily which form, of activity that constitutes a felony under State, federal, or foreign law, regardless of whether or not such activity is specified in paragraph (7);
 18 U.S.C. § 1956.

*knows* that the proceeds he laundered came from an illegal source and "suggestive" materials carry a presumption of legality through the First Amendment, they logically cannot be convicted of money laundering without a prior judicial determination of the legality of the alleged obscene materials they are accused of distributing.

However, this rationale has already been rejected by the Supreme Court in *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). There, in discussing disputed civil RICO penalties, the Court rejected the appellant's contention that the term "unlawful activity" was synonymous with "conviction," stating that:

> a prior-conviction requirement cannot be found in the definition of 'racketeering activity.' Nor can it be found in § 1962, which sets out the statute's substantive provisions.... Section 1962 renders certain conduct "unlawful"; ...

*Id.* at 488–89, 105 S.Ct. at 3280–81. The Court declared that "racketeering activity consists not of acts for which the defendant has been convicted, but of acts for which he could be." *Id.* The same reasoning is persuasive in the instant case. It would be impossible, under the defendants' reading of the relevant statutes, to ever join obscenity and money laundering counts in the same prosecution. As the Court noted in *Sedima,* prior-conviction requirements carry "problematic consequences" of their own:

> Problems would also arise if some or all of the convictions were reversed on appeal. Finally, the compelled wait for the completion of criminal proceedings would result in pursuit of stale claims, complex statute of limitations problems, or the wasteful splitting of actions, with resultant claim and issue preclusion complications.

*Id.* at 490 n. 9, 105 S.Ct. at 3282 n. 9.

Furthermore, closer inspection of the procedural facets of a criminal trial require the opposite result. By analogy, to convict a defendant of drug trafficking and money laundering in the same proceeding, the government must prove that the "drug" involved was a controlled substance. This is done at trial, either by stipulation of counsel or by the testimony of an expert experienced in drug testing. Without the admission of that evidence, the government's case must necessarily fail.

 Having presented evidence of the predicate offense of drug trafficking, the government then, in its case-in-chief, presents evidence of the alleged money laundering. In its charge, the court instructs the jury that if it finds the defendants not guilty of the predicate offense it need not deliberate further on the money laundering counts. This means of effectuating the money laundering statute contemplates that the government need not prove, in a prior judicial proceeding, that the "drug" involved was a controlled substance. *Cf. United States v. Jackson,* 935 F.2d 832 (7th Cir.1991). Indeed, a defendant in a narcotics distribution prosecution can be convicted on his *subjective belief* that the material he attempts to possess and distribute is a controlled substance which differs from the actual knowledge requirement of the money laundering statute, *see U.S. v. Pennell,* 737 F.2d 521 (6th Cir.1984) (in a "sting" operation where there are no actual controlled substances involved, a conviction is valid if the defendant subjectively believed that he was attempting to possess and distribute a controlled substance), and yet, as noted above, the two offenses have been joined in the same prosecution. *See Jackson, supra.*

It is undisputed that the crime of money laundering requires a predicate offense. Here, the predicate offense is a violation of §§ 1461 and 1462, the mailing and distribution of obscene materials. Consequently, the government will be required at trial to prove, beyond a reasonable doubt, the elements of those offenses and, once proven, the case would proceed to the money laundering offenses. If it fails in its proof as to the alleged obscenity offenses, it must, as a matter of law, fail in its pursuit of the alleged money laundering violation as well. The knowledge requirement of the money laundering statute will be satisfied without a *prior* judicial determination of the obscenity of the material involved. For the reasons hereinabove articulated, the defendants' motion to dismiss Counts VII–IX will be denied.

## E. The Motion to Dismiss Count I on Statutory and Constitutional Grounds.

The defendants challenge Count I of the indictment insofar as it is based upon the money laundering statute, which the court has rejected, *supra,* and on the additional ground that conspiracy requires an *illegal* objective, which cannot be demonstrated due to the nebulous concept of obscenity. In particular, the defendants assert that the fact that the sexually explicit items were shipped *from* the Eastern District *to* the Middle District of Pennsylvania requires the government to allege in the indictment that the defendants conspired to perform an illegal objective in the Middle District. In other words, they claim that the indictment should have alleged that the defendants knew that the items shipped would be offensive to the "contemporary community standards" within the Middle District. In essence, this is just another way of arguing that the defendants cannot be held criminally responsible for shipping sexually suggestive materials without there having been a prior judicial determination that the items were obscene. That argument has already been rejected above and, therefore, the defendants' claim must fail. *See Hamling, supra; United States v. Cangiano,* 491 F.2d 906 (2nd Cir.1974).

Also, the defendants argue that regardless of a prior judicial determination of the obscenity of the materials shipped, the indictment failed to allege that each defendant had "actual" knowledge of the shipment of sexually explicit materials into the Middle District of Pennsylvania. They cite no authority in support of their position and, their assertions to the contrary, the superseding indictment does, in fact, properly allege that the defendants "knowingly used or caused to be used, the United States Mails for mailing and delivery" of purportedly obscene materials to post office boxes in Harrisburg and Scranton. The indictment's allegations go far beyond notifying the defendants of the *district* in which the materials were sent; it has notified them of the actual *cities* within the district. Furthermore, it is axiomatic in the law of conspiracy that all of the defendants need not have knowledge of all of the details of the conspiracy nor all its partici-

pants. *See generally United States v. Janotti,* 729 F.2d 213 (3rd Cir.1984); *United States v. Sophie,* 900 F.2d 1064 (7th Cir.1990). Consequently, any claim that the prosecution need allege that each defendant had actual knowledge of the shipping destination of the materials at issue or that each co-conspirator was fully aware of all of the details of the conspiracy must be rejected. The indictment has sufficiently notified each defendant of their role in furthering Krasner's scheme to distribute sexually explicit material. It need do no more.

## F. The Challenge to Counts XII–XVI (The Forfeiture Counts).

Finally, the defendants have disputed, on constitutional and statutory grounds, the validity of the forfeiture counts, particularly contending that this court should reject a "blanket" forfeiture of the defendants' businesses as many of the items in the stores and production houses have not been determined to be obscene. It should be noted at the outset that the defendants "do not attack the *entirety* of the forfeiture sought by the government but only the portion of the forfeiture counts which seeks to forfeit property other than the obscene materials and the proceeds derived therefrom." *Defendants' brief at 2.*

First, the defendants reiterate their argument that the combination of money laundering and obscenity counts in the same proceeding would be unconstitutional due to the higher scienter requirement of the former. It follows, therefore, that a forfeiture based upon such an alleged unconstitutional prosecution would also be invalid. However, that argument has already been rejected and requires no further comment here. Accordingly, any claim that the forfeiture counts require dismissal because the indictment charges both obscenity and money laundering violations will be dismissed.

Second, the constitutionality of forfeiting the defendants' entire media empire based upon the judicially determined obscenity of a handful of videos and magazines has been questioned. The defendants assert that the proposed forfeiture order is, in effect, a prior restraint and an attempt to close down what the government feels are unsavory out-

lets for distributing sexually explicit material, all in circumvention of the First Amendment's protections. In addition, they contend that the forfeiture order is overbroad in that it attempts to forfeit more than what has been determined to be legally obscene. In support of this, numerous cases have been cited involving the invalidation of, and restrictions on, government's attempts to "punish" obscenity violations.[7]

The government, in opposition, argues that, because it is attempting to forfeit the property only after the defendants have been convicted of the predicate offense of obscenity, there can be no prior restraint. In particular, it notes that the nature of the predicate offense should have no bearing on the forfeitability of the property at issue. In addition, it warns that the under the defendants' view, businesses which engage in First Amendment-protected activity would never be forfeitable, even when the predicate offense is drug related. Thus, a drug cartel seeking to invest its illicit proceeds, might purchase a television station to launder its money, knowing that the First Amendment would prevent the government from seeking forfeiture of the station in a subsequent criminal charge. Therefore, the court is requested to repudiate the notion that the First Amendment prohibits the forfeiture of the defendants' assets.

In a recent opinion, the United States Supreme Court has rejected the position that a RICO-based forfeiture of protected and unprotected sexually explicit materials, incident to an obscenity prosecution, constitutes a prior restraint. *Alexander v. United States*, —— U.S. ——, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993). In *Alexander*, the defendant was convicted of racketeering subsequent to a jury's finding that four magazines and three videotapes were obscene and, as a result, in a separate forfeiture proceeding, the defendant's wholesale and retail businesses, including all assets therein, and nearly $9 million in funds acquired through those enterprises, were ordered forfeited. In his appeal, Alexander argued similarly that the forfeiture imposed under RICO constituted a prior restraint. The Court, in rejecting Alexander's claim, stated that "[t]he term prior restraint is used 'to describe administrative and judicial orders forbidding certain communications *when issued in advance of* the time that such communications are to occur'" and, that "[b]y lumping the forfeiture imposed in this case after a full criminal trial with an injunction enjoining future speech, [Alexander] stretches the term 'prior restraint' well beyond the limits established by our cases. To accept [his] argument would virtually obliterate the distinction, solidly grounded in our cases, between prior restraints and subsequent punishments." *Id.*, at ——, 113 S.Ct. at 2771 (emphasis supplied). Significantly, the opinion noted that the "forfeited assets were directly linked to [Alexander's] commission of [the] racketeering offenses," *id.*, at ——, 113 S.Ct. at 2772, which indicates that acceptable forfeitures are those that demonstrate a nexus between the statutory language authorizing the seizure and the item seized.

Furthermore, the argument that the effect of the forfeiture would constitute a prior restraint was discounted:

> By contrast, the RICO forfeiture order in this case does not forbid the petitioner from engaging in any expressive activities in the future, nor does it require him to obtain prior approval for any expressive activities. It only deprives him of specific assets that were found to be related to his previous racketeering violations. Assuming, of course, that he has sufficient untainted assets to open new stores, restock his inventory, and hire staff, the petitioner can go back into the adult entertainment business tomorrow, and sell as many sexually explicit magazines and videotapes as he likes, without any risk of being held in contempt for violating a court order. Unlike the injunctions in *Near [v. Minnesota ex rel. Olson*, 283 U.S. 697, 51 S.Ct. 625, 75

---

7. Footnotes 13, 14 and 16 of the defendants' brief in support of its motion to dismiss Counts XII–XVI, *document 96 of record*, cite to limitations on the government's ability to "padlock" adult bookstores through the enactment of nuisance laws, footnote 13; revocation or denial of permits, footnote 14; and the seizures of property after conviction of an obscenity violation, footnote 16.

L.Ed. 1357 (1931) ], [*Organization for a Better Austin v.*] *Keefe* [402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971) ], and *Vance* [*v. Universal Amusement Co.*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980) ], the forfeiture order in this case imposes no legal impediment to—no prior restraint on—petitioner's ability to engage in any expressive activity he chooses. He is perfectly free to open an adult bookstore or otherwise engage in the production and distribution of erotic materials; he just cannot finance these enterprises with assets derived from his prior racketeering offenses.

*Id.,* at ——, 113 S.Ct. at 2771. Here, the defendants' concerns for the nature of the material they distribute and the possibility of a prior restraint upon arguably protected sexually expressive materials are understandable. However, it will be the jury's duty to determine whether the government has established a sufficient nexus between the property at issue and the statutory mandates of § 982 before the government may forfeit that which it seeks. Accordingly, the defendants' contention that the proposed forfeiture constitutes a prior restraint is rejected.

 Third, the defendants contend that the scope of the proposed forfeiture exceeds that permissible under 18 U.S.C. § 982.[8]

Their argument follows that assets beyond that which were involved in the distribution of the handful of allegedly obscene videos and magazines should not be subject to forfeiture. They further complain that the government tracked the statutory language of 21 U.S.C. § 853,[9] the drug forfeiture statute, in the superseding indictment which, they assert, authorizes broader forfeitures than those authorized by § 982.

Admittedly, the prosecution has utilized both the language of § 853 and § 982 in the indictment. However, the government has sought its forfeiture under § 982 and, at trial, the jury will be instructed pursuant to that choice. The defendants' principal contention lies in their interpretation of the term "facilitate." They assert that its presence in the indictment indicates that the government intends to forfeit more than "any property ... *involved* in the offense." 18 U.S.C. § 982(a)(1) (emphasis added). However, in civil forfeiture proceedings (§ 981(a)(1)) the word "facilitate" has been interpreted coterminously with "involved in":

Even if a portion of the property sought to be forfeited is used to "facilitate" the alleged offense, then all of the property is forfeitable (*see United States v. Santoro,* 866 F.2d 1538, 1542 (4th Cir.1989)). "Facilitating" property occurs when the prop-

---

**8.** Section 982 reads, in pertinent part:

**§ 982. Criminal forfeiture**
(a)(1) The court, in imposing sentence on a person convicted of an offense in violation of ... section 1956 ... of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property....

18 U.S.C. § 982.

**9.** Section 853 reads, in pertinent part:

**§ 853. Criminal Forfeitures**
(a) **Property subject to criminal forfeiture**

. . . . .

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
(2) any of the person's property used, or intended to be used, in any manner or part, to

commit, or to facilitate the commission of, such violation; and

. . . . .

(p) **Forfeiture of substitute property**
If any of the property described in subsection (a) of this section, as a result of any act or omission of the defendant—
(1) cannot be located upon the exercise of due diligence;
(2) has been transferred or sold to, or deposited with, a third party;
(3) has been placed beyond the jurisdiction of the court;
(4) has been substantially diminished in value; or
(5) has been commingled with other property which cannot be divided without difficulty;
the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5).

21 U.S.C. § 853. As noted above, the superseding indictment utilizes nearly identical language.

erty as used makes the underlying criminal activity less difficult or "more or less free from hindrance" (*United States v. Schifferli*, 895 F.2d 987, 990 (4th Cir.1990); *United States v. Premises Known As 3639–2nd Street*, 869 F.2d 1093, 1096 (8th Cir.1989)). In light of the persuasive authority of the district courts outside this Circuit, in this Court's view, section 981(a)(1)(A) applies to property used to facilitate the alleged criminal violations.

*See United States v. Certain Funds on Deposit*, 769 F.Supp. 80, 84 (E.D.N.Y.1991). The *Certain Funds*'s court's reasoning is equally persuasive here, especially in light of the legislative history of § 982 which states:

> [T]he term "property involved" is intended to include the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense.

134 Cong.Rec. S17365 (daily ed. Nov. 10, 1988). The use of the "to facilitate" language in the indictment has not altered the permissible scope of the forfeiture sought. While the court will decline to strike the forfeiture counts of the superseding indictment, it notes that at the appropriate time at trial, the defendants will be free to raise any objections to evidence presented that they believe goes beyond the scope of § 982. To attempt to limit the items forfeitable, before they are presented at trial, would be premature.

### III. Conclusion.

In sum, for the reasons articulated herein, the court will deny the defendants' motion to dismiss the superseding indictment. This result will not offend the First Amendment. As noted by the Supreme Court, it may mean:

> that some cautious booksellers will practice self-censorship and remove First Amendment protected materials from their shelves. But deterrence of the sale of obscene materials is a legitimate end of anti-obscenity laws, and our cases have long recognized the practical reality that "any form of criminal obscenity statute applicable to a bookseller will induce some tendency to self-censorship and have some

inhibitory effect on the dissemination of material not obscene."

*Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989) *quoting Smith v. California*, 361 U.S. 147, 154–55, 80 S.Ct. 215, 219–20, 4 L.Ed.2d 205 (1959). An appropriate Order will be entered.

### ORDER

NOW, this 15th day of July, 1993, **IT IS HEREBY ORDERED** that the defendants' motions to dismiss, *documents 84, 88, 92, 93, 98, 99 and 107 of record,* are **denied**.